These consolidated appeals are from judgments entered in Jefferson Circuit *Page 550 
Court against the appellants herein, Mississippi Valley Title Insurance Company and W. Dave Upton, in an action to determine liability for an undisclosed and unrecorded easement. We reverse and remand.
 I.
In August 1974, W. Dave Upton and Roger D. Grubbs, who were business partners, purchased a parcel of land containing over 272 acres situated in Shelby County, Alabama (hereinafter referred to as the "subject property"). The property was purchased for a cattle farm. Grubbs lived on the property and handled the day-to-day operation and management of the farm.
On January 23, 1975, Upton was served a copy of a complaint filed in Shelby Circuit Court against himself and Grubbs. The complaint, filed by Shelby County and other named plaintiffs, sought to enforce an easement over the subject property. Because Upton considered himself a passive investor in the property, and because Grubbs handled all the business matters relating to the property, Upton contacted his partner and turned the matter over to Grubbs, who hired an attorney to handle the case. Upton did not in any way participate in the litigation: he never had any communication with the attorneys involved, and he never received a copy of the final judgment entered on November 6, 1975, granting the plaintiffs the easement or right-of-way they sought. This judgment was filed in the office of the clerk of the Shelby Circuit Court, but was never recorded in any record book in the office of the probate judge of Shelby County.
On July 11, 1978, Grubbs began bankruptcy proceedings. Upton continued to pay the partnership debts and began looking for a buyer for the subject property. He contacted Homer Dobbs about purchasing the property. Upton met Dobbs and they drove over the property together, during which time Upton claims that he told Dobbs that his (Upton's) partner, Grubbs, had agreed not to lock a certain gate so as to allow a Mr. Roy Holcomb and his hunting club access over the property. Dobbs and Handy denied this and further denied any knowledge whatsoever of any rights of ingress and egress over the property. Upton did not tell Dobbs that Holcomb and his hunting club, as well as others, had obtained a judgment granting them that right-of-way, because, Upton claims, he had not known about the judgment, and, at that time, had thought the matter was settled by a mere agreement between Grubbs and Holcomb.
On August 15, 1978, Upton, as seller, and Homer and Peggy R. Dobbs (Dobbs), and V.C. and Bobbie L. Handy (Handy), as buyers, contracted for the sale of Upton's one-half interest in the subject property, contingent on a similar sale by Grubbs's trustee in bankruptcy. The sales contract required Upton to furnish Handy and Dobbs title insurance in the amount of the total purchase price. Upton contracted with Mississippi Valley Title Insurance Company (Mississippi Valley), to have it issue an interim title binder and a title insurance policy on the subject property with the four grantees named as insureds under the policy.
Prior to issuing an interim title binder, Mississippi Valley performed a title search on the subject property, which entailed a search of certain public records affecting real property in Shelby County. The search included the records of the tax assessor, tax collector, U.S. Bankruptcy Court, and the probate judge's office. Mississippi Valley did not, however, search the records of the clerk of the Shelby Circuit Court. Mississippi Valley issued an interim title insurance binder to Handy and Dobbs on October 23, 1978, which was expressly made "subject to the terms, provisions, and conditions and stipulations of the form of policy applied for."[1] The binder did not list as an exception from coverage the November *Page 551 
6, 1975, judgment granting a right-of-way over the property.
Grubbs's trustee in bankruptcy conveyed Grubbs's one-half interest in the subject property to Handy and Dobbs on November 28, 1978; and on December 12, 1978, Upton conveyed by warranty deed his one-half interest to Handy and Dobbs. Mississippi Valley issued a title insurance policy to Handy and Dobbs dated December 13, 1978. This policy also did not expressly exclude the 1975 right-of-way judgment, but did exclude "easements . . . not shown by the public records," as well as a "[r]ight of way for road and rights in connection therewith as granted to Shelby County, Alabama, as shown by instrument [dated December 8, 1952] recorded in Deed Book 157, page 64." Furthermore, the policy itself expressly defined "public records" as "those records which by law impart constructive notice of matters relating to said land."
Following the conveyance, a dispute arose between Upton and Handy and Dobbs relating to certain participation certificates (capital stock) in the Federal Land Bank of New Orleans. Upton contended that he did not intend for these certificates, worth approximately $13,000, to be transferred to Handy and Dobbs at the time of the conveyance of the subject property. Handy and Dobbs disputed this and claimed that they knew they were supposed to get the certificates in the deal. The dispute escalated into a lawsuit filed by Upton in the Jefferson Circuit Court, seeking reformation of the transfer of the Federal Land Bank certificates due to a mutual mistake and misunderstanding.
Handy and Dobbs filed a counterclaim against Upton, alleging a breach of the warranties of title contained in the warranty deed from Upton. Dobbs had learned of the November 6, 1975, judgment from Roy Holcomb in June 1979, and in their counterclaim, Handy and Dobbs asserted that this judgment constituted an encumbrance that had not been disclosed to them and that greatly diminished the value of the subject property. The counterclaim was severed from the reformation suit and transferred to the "law side" of the Jefferson Circuit Court, where it was tried separately. The reformation suit, which remained in the "equity side," is not a part of this appeal.[2]
Upton filed a third-party complaint against Mississippi Valley, alleging that its failure to find and list as an exception the 1975 easement judgment was a breach of both the title insurance binder and policy. Upton sought indemnification from Mississippi Valley for all sums adjudged against Upton based on the counterclaim filed by Handy and Dobbs. Later, by amendment, Upton claimed expenses and attorneys fees, alleging Mississippi Valley had a duty to defend him.
Handy and Dobbs cross-claimed against Mississippi Valley, alleging negligence in its failure to uncover an easement of public record. Handy and Dobbs further claimed that in deciding to purchase the subject property they detrimentally relied on the expertise of Mississippi Valley in its preparation of the interim title insurance binder, which failed to list the 1975 judgment as an encumbrance on the title. They also alleged that Mississippi Valley breached the title insurance policy by failing to reimburse Handy and Dobbs for the resulting reduction in the value of the subject property.
Mississippi Valley then counterclaimed against Upton, alleging a breach of the warranties of title, and sought to be subrogated to the rights of Handy and Dobbs against Upton for all sums adjudged against Mississippi Valley in favor of Handy and Dobbs.
The following illustration may be helpful in explaining the various claims of each of the parties: *Page 552 
[EDITORS' NOTE: ILLUSTRATION IS ELECTRONICALLY NON-TRANSFERRABLE.]
Mississippi Valley's motion for summary judgment was denied. Trial ensued. At the close of the trial, Handy and Dobbs dismissed their claims against Upton. Mississippi Valley and Upton each moved for a directed verdict, and both motions were denied. The jury returned a verdict of $103,000 for Handy and Dobbs against Mississippi Valley, and a verdict of $48,000 for Mississippi Valley against Upton. Judgment to this effect was entered, and all post-judgment motions were denied. Upton and Mississippi Valley appealed, and, by order dated June 5, 1984, these appeals were consolidated for hearing in this Court.
 II.
The threshold issue raised in this case is whether Mississippi Valley's appeals are due to be dismissed because its post-judgment motions were not timely filed in the proper court. Judgment was entered in this case on October 20, 1983. Mississippi Valley then filed motions for judgment notwithstanding the verdict or, in the alternative, for new trial on November 17, 1983, less than 30 days after the entry of judgment. Rule 59 (b) and (e), A.R.Civ.P. These motions, however, were filed in the office of the District Court of Jefferson County, rather than the Circuit Court of Jefferson County. The motions were transmitted to the circuit court office by the district court office on November 29, 1983, more than 30 days after entry of judgment. Handy and Dobbs contend that this constituted a late filing. We disagree.
Mississippi Valley correctly points out that Rule 5 (e), set forth below, governs the place for filing these post-judgment motions:
 "The filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk or register of the court, except that the judge may permit the papers to be filed with him, in which event he shall note thereon the filing date and forthwith transmit them to the office of the clerk." (Emphasis added.)
Furthermore, Code of 1975, § 12-17-160, provides that the clerk of the circuit court shall serve as the ex officio clerk of the district court, unless, pursuant to § 12-17-161, this Court authorizes a separate clerk's office for the district court:
"§ 12-17-160
 "Except as otherwise provided in this article, the clerk of the circuit court shall be ex officio clerk of the district court within the circuit and shall have administrative responsibility for and supervision of the records and clerical services of the district court in accordance with applicable general laws and rules. *Page 553 
"§ 12-17-161
 "(a) Authority and responsibility for the operation of a separate clerk's office for the district court of a county may be authorized by the supreme court upon the written request of the clerk of the circuit court or the judges of the district court. When the supreme court authorizes a separate clerk's office for the district court of a county, the clerk of the circuit court shall not be the ex officio clerk of the district court and shall have no administrative responsibilities for and supervision over the operation of such office. . . ." (Emphasis added.)
No such written request has been submitted to this Court by the circuit court clerk or district judges of Jefferson County. Therefore, we conclude that Mississippi Valley's filing of its post-judgment motions in the district court office was a sufficient and timely filing with the clerk of the Jefferson Circuit Court under Rule 5 (e), supra.
 III.
The dispositive issue in this case is whether Mississippi Valley was entitled to a directed verdict or judgment notwithstanding the verdict on both the breach of contract claim and the negligence claim asserted by Handy and Dobbs. With respect to the contract claim, Mississippi Valley argues that under the express terms of the contract of insurance, it was not required to search the records of the Shelby Circuit Court. With respect to the negligence count, Mississippi Valley argues that, apart from the contract, there is no other duty imposed by law on title insurance companies requiring them to search circuit court records. We agree with Mississippi Valley's conclusions and further agree that these issues were questions of law for the trial judge and should have been resolved in favor of Mississippi Valley. Thus, Mississippi Valley's motion for a directed verdict or judgment notwithstanding the verdict was due to be granted on all claims asserted by Handy and Dobbs.
 A.
The standard applicable to this Court's review of a trial court's ruling on a motion for directed verdict and a motion for judgment notwithstanding the verdict is the same standard applicable to the trial court. That standard is the scintilla rule. Turner v. Peoples Bank of Pell City, 378 So.2d 706 (Ala. 1979). In Wadsworth v. Yancy Bros. Co., 423 So.2d 1343 (Ala. 1982), we adopted the following test for a motion for directed verdict:
 "[A] two-pronged test is applicable: (1) The sufficiency vel non of evidence, giving rise to a reasonable inference supportive of a conclusion favorable to the non-moving party; and (2) assuming the first prong is met, whether such evidence, if believed, establishes each and every requisite element of plaintiff's claim. See Tew v. Jones, 417 So.2d 146 (Ala. 1982)." 423 So.2d at 1345.
The same test applies to a motion for judgment notwithstanding the verdict. Marion v. Hall, 429 So.2d 937 (Ala. 1983); Exparte Bennett, 426 So.2d 832 (Ala. 1982).
Whether the scintilla rule requires that a given case go to the jury, or whether the sufficiency of the evidence supports the jury verdict, depends on the substantive law. Alabama PowerCo. v. Taylor, 306 So.2d 236, 293 Ala. 484 (1975). The trial court must decide, as a matter of substantive law, those questions on which there is no genuine issue of material fact.Rose v. Miller Company, 432 So.2d 1237 (Ala. 1983). Moreover, a directed verdict is proper where the law would not authorize a jury to render a verdict on the evidence or where a verdict by a jury would be contrary to principles of law as applied to the facts presented at trial. O'Donohue v. Citizens Bank,350 So.2d 1049 (Ala.Civ.App. 1977).
 B. The Contract Claims
As a general rule, whether or not a written contract is ambiguous is a question of law for the trial court. SmithsWater Authority v. City of Phenix City, 436 So.2d 827 (Ala. 1983). If the contract is *Page 554 
deemed to be unambiguous, the trial court must also determine the force and effect of its terms as a matter of law. BrownMechanical Contractors v. Centennial Ins. Co., 431 So.2d 932
(Ala. 1983). Further, where there is no ambiguity in the terms of an insurance contract, it is the duty of this Court to apply its terms and enforce the contract as written. Turner v. UnitedStates Fidelity Guaranty Co., 440 So.2d 1026 (Ala. 1983). We cannot defeat the express provisions of a policy, including any exclusion, by making a new contract for the parties. Turner,supra. This Court has consistently recognized that
 "`In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts or to take anything from them.'" Life and Casualty Ins. Co. v. Whitehurst, 226 Ala. 687, 148 So. 164 (1933).
Moreover, "[t]he mere fact that adverse parties contend for different constructions [of a particular policy provision] does not of itself force the conclusion that the disputed language is ambiguous." Antram v. Stuyvesant Life Ins. Co., 291 Ala. 716,720, 287 So.2d 837, 840 (1973).
As pointed out above, the title insurance policy in question excluded from coverage any "easement not shown by the publicrecords." (Emphasis added.) The term "public records" is defined in the policy as "those records which by law impartconstructive notice of matters relating to said land."
(Emphasis added.) Mississippi Valley moved for a directed verdict on the ground that these policy provisions obligated it to search only the records of the probate court because those are the only public records which by law impart constructive notice of easements. Mississippi Valley has cited Code of 1975, §§ 35-4-51 and -63, which provide in pertinent part:
"§ 35-4-51
 "Except as may be otherwise provided by the Uniform Commercial Code, all deeds, mortgages, deeds of trust, bills of sale, contracts or other documents purporting to convey any right, title, easement, or interest in any real estate or personal property and all assignments of mortgages, deeds of trust or other securities for debt or extension agreements with respect thereto, when executed in accordance with law, shall be admitted to record in the office of the probate judge of any county. Their filing for registration shall constitute notice of their contents." (Emphasis added.)
"§ 35-4-63
 "The recording in the proper office of any
conveyance of property or other instrument which may be legally admitted to record operates as a notice of the contents of such conveyance or instrument without any acknowledgement or probate thereof as required by law." (Emphasis added.)
In denying Mississippi Valley's motion for directed verdict, the trial court said:
 "THE COURT: Let me suggest to y'all another view. My position is that I'm not the final arbitrator of this controversy, the fact finder. Those are the ladies and gentlemen of the jury who will do that. I think the controversy here has boiled itself down to the definition of terms contained in the legal instrument title binder, title policy.
 "Your side contends public records means lis pendens and recordation. They say that it's not all that inclusive. Public records may be anything in the clerk's office that affect title to real estate. I think those are factual matters. I really do. Not having heard all the case but at the moment I'm going to overrule your motion. Give you an exception."
We think the trial court erred not only in denying Mississippi Valley's motion for directed verdict on the merits, but also in concluding, in essence, that, because each side contended for a different construction of the term "public records," the *Page 555 
term is ambiguous, disregarding the express and unambiguous definition of the term contained in the policy. Antram v.Stuyvesant Life Ins. Co., supra. Assuming arguendo that an ambiguity had existed, it was also error to delegate to the jury the function of construing the terms of the policy. InAetna Life Ins. Co. v. Hare, 47 Ala. App. 478, 256 So.2d 904
(1972), the court explained:
 "In the first place, insurance contracts are subject to the same general rules of all written contracts, that is, in case of doubt or uncertainty of the meaning thereof, they are to be interpreted against the party drawing them. If a policy is clear and unambiguous in its terms, there is no question of interpretation or construction. Dunlap v. Macke, 233 Ala. 297, 171 So. 721. If a policy is unclear and ambiguous in its terms and not void for uncertainty, it must be interpreted and construed under well settled rules of construction applicable to all contracts. It is the province of the court, not the jury, after due consideration of the whole of the policy to determine if uncertainty and ambiguity exist in its terms. It is further the province of the court, not the jury, to construe a policy, even though ambiguous and unclear and not void for uncertainty, where its interpretation must come from the writing itself without the aid of evidence aliunde or facts in pais. Boykin v. Bank of Mobile, 72 Ala. 262; Lutz v. Van Heynigen Brokerage Co., 199 Ala. 620, 75 So. 285; Foster Creighton Co. v. Box, 259 Ala. 474, 66 So.2d 746.
 "It was said in Air Conditioning Engineers v. Small, 259 Ala. 171, 65 So.2d 698:
 "`We think our cases mean that the court, and not the jury, will analyze and determine the meaning of a contract, whether verbal or written when its terms are clear and certain, and also ascertain whether or not it is ambiguous in the light of its terms, and if it is found to be ambiguous, but not void for uncertainty, its meaning may be clarified by a consideration of the facts and circumstances aliunde and in pais, and when so it is the province of the jury to ascertain those facts and draw inferences from them which carries to the jury the whole issue upon proper instructions by the court. . . .'
 "The trial court below submitted the question of the existence of an ambiguity in the policy to the determination of the jury. Such was error and was so assigned by appellant in Assignments 12, 13 and 14." (Emphasis added.) 47 Ala. App. at 486-487, 256 So.2d at 911.
We find nothing ambiguous in the definition of the term "public records" contained in the policy, and therefore construction of the policy, in the usual sense, was unnecessary. Accordingly, the trial court had the duty only to construe and enforce the policy as it was written, giving it effect according to the obvious meaning of provisions expressed in unambiguous terms. Woodall v. National Life and AccidentIns. Co., 269 Ala. 606, 114 So.2d 889 (1959). See generally 44 C.J.S. Insurance § 290 (1945).
The parties by contract clearly limited the records-search requirement with express reference to the law that determines those records which impart constructive notice. The determination of which records "by law impart constructive notice of matters relating to land" was patently a question of law for the trial court. In resolving that question, we need only to give effect to the obvious meaning of the word "law" and refer to those things of which the law is composed, namely the statutes, constitution, and case precedent of this state.[3]
The only law we find declaring that certain records shall impart constructive notice of matters relating to land is Code of 1975, *Page 556 
§§ 35-4-51 and -63, set out above. We find no cases, nor are we cited to any legal precedent whatsoever in this state, that holds that any other court records, in addition to those in the office of the probate judge of any county, shall impart constructive notice of an easement in real estate.
After all, Mississippi Valley did not undertake to render a title opinion on the property, and such an undertaking would have amounted to the unauthorized practice of law. Land TitleCo. of Alabama v. State ex rel. Porter, 292 Ala. 691,299 So.2d 289 (1974). Mississippi Valley simply insured the title to the extent it was contractually obligated to search the records, as is evidenced by the first statement contained in the title insurance binder:
 "Mississippi Valley Title Insurance Company, herein called the Company, hereby insures: That the title to the land described in Schedule A hereof, was on October 19, 1978, at 8:00 o'clock A.M., vested in fee simple in W. Dave Upton and Roger D. Grubbs subject to requirements herein subject only to the defects, objections, liens and encumbrances, as shown in Schedule B hereof." (Emphasis added.)
Any other construction of this statement would make the binder tantamount to a title opinion.
Therefore, with respect to the breach of contract claims asserted against Mississippi Valley by Handy and Dobbs, we conclude that the trial court erred in refusing to grant Mississippi Valley's motion for directed verdict on the ground that, as to easements, the policy definition of "public records" as a matter of law limited Mississippi Valley's contractual obligation to a search only of the records of the probate judge's office.
Because we have found that the case must be reversed for the failure of the trial judge to grant Mississippi Valley's motion for directed verdict on the policy definition of public records, we need not reach the question of whether the easement in question constituted a lien or encumbrance upon the purchaser's title, and, thus, whether it was within the scope of coverage under the policy of insurance which expressly excluded marketability.
 C. Negligence Claim
Handy and Dobbs contend that it is the necessity, obligation, duty, and responsibility of a title insurer such as Mississippi Valley to examine and search the records of the circuit clerks and registers, notwithstanding the provisions to the contrary contained in the contract of insurance. In support of this argument, Handy and Dobbs point to the fact that Mississippi Valley did actually conduct a search of records beyond those contained in the probate judge's office, including a review of the records of the tax assessor's office, the tax collector's office, and the United States Bankruptcy Court for the Northern District of Alabama. Therefore, Handy and Dobbs maintain that Mississippi Valley was negligent in failing to include the circuit court records in its search. We disagree.
In essence, Handy and Dobbs contend that the duty to search all public records springs from the fact that Mississippi Valley did indeed conduct a search of records beyond those it was contractually obligated to search. In so doing, Handy and Dobbs argue, Mississippi Valley assumed the duty to conduct such a search in a reasonable manner, which they argue would have included a search of the records of the Shelby Circuit Court. We decline to recognize this theory of reasonableness espoused by Handy and Dobbs because its application to the duty of title insurance companies to search is altogether too indeterminate. By undertaking to examine the records of office A, does a title insurance company assume the duty to also examine the records of office B, or C, or D, depending on the office in which the undiscovered encumbrance may be found? Stated differently, does the fact that Mississippi Valley searched the Bankruptcy Court records and the tax records in Shelby County justify Handy and Dobb's alleged reliance on Mississippi Valley to also search the Shelby Circuit Court records? We think not. *Page 557 
 "[R]eliance or the lack thereof by the insured, which is understood by the insurer, is of `probative force to show both the undertaking of the duty and relation of the parties upon which the action for negligence in performance thereof may be predicated.' [Hartford Steam Boiler Inspection Ins. Co. v. Pabst Brewing Co.] 201 F. [617] at 629 [(7th Cir. 1912)]." Ranger Ins. Co. v. Hartford Steam Boiler Inspection Ins. Co., 410 So.2d 40, 42 (Ala. 1982).
The ascertainment or measurement of reliance on facts such as these presents too tenuous a situation upon which to base an affirmative duty. To impose such a duty would place an undue burden on title insurance companies that have sought, by contract, to limit their duty to search.
Whether or not Mississippi Valley would be liable in negligence had it voluntarily searched the records of the Shelby Circuit Court and failed to discover the judgment in question, we need not decide.
Mississippi Valley argues that, apart from the contract of insurance, it had no other duty to search circuit court records. We agree, and we find no authority in this state for imposing a common-law duty on title insurance companies that would require them to search circuit court records. Handy and Dobbs cite the Court of Appeals of Washington in Shotwell v.TransAmerica Title Ins. Co., 16 Wn. App. 627, 558 P.2d 1359
(1976), as further authority for the standard to which they would have this Court hold Mississippi Valley. The regulation of the title insurance industry in the state of Washington, however, precludes the application of the same standard to a title insurance company in Alabama. The Court in Shotwell
explained:
 "[W]e know that in this jurisdiction no title company can be authorized to transact business in any county unless it or its agent owns and maintains a complete set of tract indexes for that county. RCW 48.29.020
and .040. Thus, we know that in this jurisdiction title insurance companies operate as so-called `title-plant companies' which conduct their own independent searches. Indeed, the policy in this case notified the policyholder of some of the defects revealed by the search which was in fact undertaken. Separate charges do not appear on the face of the policy for the conduct of the search and for the risk of exposure under the insuring provisions of the contract. In Washington, then, title insurance characteristically combines search and disclosure with insurance protection in a single operation.
 "Under those circumstances, a duty to conduct a reasonable search rises by implication from the nature of the insuring contract. . . ." 16 Wn.App. at 630-631, 558 P.2d at 1361
The title insurance companies in Alabama are not by law required to maintain tract indexes in a county in which it transacts business. Therefore, the concept of title insurance and the expectancy of a policyholder as found in the state of Washington have no application to the title insurance industry in the state of Alabama. Consequently, we conclude that Mississippi Valley had no legal duty to search circuit court records and thus, "[n]o tort exists when no legal duty is owed from the alleged tortfeasor to the party claiming injury."Ranger Ins. Co., supra, at 42.
Finding that the contract of insurance here negates the existence of any duty owed to Handy and Dobbs to search the circuit court records, we hold that Handy and Dobbs have not established a claim for negligence in Mississippi Valley's failure to search those records. Ranger Ins. Co., supra.
Accordingly, the trial court erred in failing to grant Mississippi Valley's motion for directed verdict on the negligence count.
 D. Conclusion
We have concluded that Mississippi Valley was entitled to a directed verdict on both the claim of breach of contract and the claim of negligence asserted by Handy and Dobbs. The claim for breach of warranty of title asserted by Handy and Dobbs against the Uptons was voluntarily dismissed. *Page 558 
The judgment from which the Uptons appeal was rendered against them on the subrogation claim asserted by Mississippi Valley. Since we hold that Mississippi Valley is not liable to Handy and Dobbs, we need not reach any issues with respect to the liability of the Uptons to subrogate Mississippi Valley, and the judgment against the Uptons is due to be reversed.
For the foregoing reasons, the judgment below is due to be, and it hereby is, reversed, and the cause is remanded for entry of judgment consistent with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.
ADAMS, J., concurs specially.
MADDOX, JONES and SHORES, JJ., not sitting.
[1] In their brief, Handy and Dobbs argue that "the terms and provisions of the title policy are not incorporated in the title binder by reference." Our reading of the title binder, however, disclosed the provisions quoted in the text above, which does make the binder subject to the terms of the policy.
[2] Although the practice in Jefferson County is to the contrary, with the adoption of the Alabama Rules of Civil Procedure in 1975, the judicial system of Alabama heralded in the merger of law and equity.
[3] The parties do not dispute that this insurance contract is to be given effect in accordance with Alabama law.