The defendant, Liggans R.V. Center, appeals from a summary judgment entered in favor of John Deere Insurance Company, the plaintiff in this declaratory judgment action. We affirm.
On September 29, 1989, a woman and a man (apparently a mother and her son) visited Liggans R.V. Center in Gadsden, Alabama, and looked at the recreational vehicles ("R.V.'s") offered there for sale, telling a Liggans salesman that they had recently sold their R.V. and wished to purchase another. The couple told the salesman that they were interested in a 1983 Allegro motor home, and they discussed with the salesman the financial details of their possibly purchasing this R.V. The unidentified couple then left, saying that the man had to keep a dental appointment but that they would be back to complete the purchase.
When the couple returned to Liggans, they obtained permission to drive the Allegro motor home to the shop of a local mechanic to have it inspected. The couple left a Chevrolet Blazer vehicle at Liggans and said that they would return the motor home by 3:00 or 3:30 that afternoon. The couple did not return, and they have never been found or identified. The Chevrolet Blazer was determined to have been stolen from Georgia, and the Allegro motor home was later found demolished in Georgia.
In effect at the time the Allegro motor home was taken was a policy of insurance issued to Liggans by John Deere. The policy provided what is known as "garagekeeper's insurance," which covers loss from specified causes. The policy specifically provided, in pertinent part, as follows:
"GARAGE COVERAGE FORM
 "Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.
". . . .
"A. COVERAGE
 "1. We will pay for 'loss' to a covered 'auto' or its equipment under:
". . . .
 "b. Specified causes of loss coverage caused by:
". . . .
"(2) Theft.
"B. EXCLUSIONS
". . . .
 "3. False pretense. We will not pay for 'loss' to a covered 'auto' caused by or resulting from:
 "a. Someone causing you to voluntarily part with it by trick or scheme or under false pretenses."
Liggans made a claim against the policy for the loss of the 1983 Allegro motor home. John Deere denied coverage, relying on the exclusion for loss due to false pretenses found at Section IV.B.3. of the policy. John Deere also filed a declaratory judgment action in the circuit court, (1) contending that the language of the insurance policy was clear and unambiguous and that the exclusion for false pretenses did not violate public policy, (2) asking for a judicial declaration of the "rights, duties, obligations, status, and legal relation" of *Page 569 
John Deere and Liggans under the policy, and (3) seeking a judicial determination that John Deere was not obligated under the insurance policy to pay Liggans for the loss of the motor home.
In its answer, Liggans denied that the language of the policy was clear and unambiguous and claimed that because the word "theft" was not defined in the insurance policy, the applicable definition was that found in Alabama's Criminal Code, specifically Ala. Code 1975, § 13A-8-2, wherein "theft" is defined so as to include a taking by false pretenses. Thus, Liggans maintained, John Deere was obligated to pay for the loss of the motor home due to the "theft" by the unidentified couple.
John Deere moved for summary judgment and filed a brief in support of its motion, and also filed the affidavit of Thomas R. Harsh, a claims examiner for John Deere. In response, Liggans filed a document entitled "Legal Authorities Of Defendant In Opposition To Plaintiff's Summary Judgment Motion," which contained summaries of the cases upon which Liggans relied to support its position. Attached to this document were copies of the cases in their entirety.
After a hearing on the motion, the trial court entered a summary judgment for John Deere, holding that there was no genuine issue of material fact and that John Deere was entitled to a judgment as a matter of law. In its order, the trial court stated that the facts were without dispute and set out a synopsis of the facts as provided hereinabove. The trial court then went on to hold as follows:
"III. LEGAL FINDINGS
 " '[W]hether or not a written contract is ambiguous is a question of law for the trial court.' Upton v. Mississippi Valley Title Ins. Co., 469 So.2d 548, 553 (Ala. 1985). Absent some overriding public policy or statutory provision, insurance companies enjoy the same freedom of contract as individuals. If the language contained in the contract is unambiguous, the policy must be enforced as written. Id.
 "In determining whether the language of a contract is ambiguous, courts construe the words according to 'the interpretation ordinary men would place on the language used therein.' Quick v. State Farm Mutual Ins. Co., 429 So.2d 1030, 1033 (Ala. 1983). The words are given the meaning that 'persons with a usual and ordinary understanding' would place on the words. Cashatt v. State Farm Mutual Ins. Co., 510 So.2d 831, 833
(Ala.Civ.App. 1987).
 "The provision in question is not construed in isolation, but the policy must be construed as a whole, looking to [the language within] its four corners. See Upton, supra, at 469 So.2d 555. If the language of an insurance policy is found to be ambiguous, that ambiguity must be resolved in favor of the insured. However, unambiguous policies must be enforced as written. Best v. Auto-Owner's Ins. Co., 540 So.2d 1381 (Ala. 1989).
"IV. COURT'S CONSTRUCTION OF THE CONTRACT
 "[Here, the trial court sets out the portions of the insurance policy quoted above.]
 "Construing the policy as a whole, and particularly the provision set out above, this court finds that the language of the contract is clear and unambiguous when the words are assigned their 'usual and ordinary' meanings. Defendant's argument that the insurance company is obligated to compensate it [because] the loss which has occurred here is covered because [, says Defendant,] 'Theft by False Pretense' has been merged into theft as theft is defined at Ala. Code 1975, § 13A-8-2 is rejected.
 "First, since Defendant parted only with possession, the offense under the common law would have been termed . . . 'Larceny by Trick.' See St. Paul Fire Marine Ins. Co. v. Veal, 377 So.2d 962 (Ala. 1979). . . . Secondly, definitions under the criminal law have no special application to the law of insurance. In fact, it has been stated that presumptions in tort and criminal law have no application to the interpretation of language used in insurance policies. Alabama *Page 570 Farm Bureau Mutual Cas. Ins. Co. v. Dyer, 454 So.2d 921 (Ala. 1984). Thirdly, since the words of the contract are to be given their 'usual and ordinary' meaning, a definition based on technical terms or legalese would not be appropriate. While definitions under the criminal law are some authority and can serve as a guide to interpretation, such definitions are not controlling for the purposes of construing the language found in an insurance policy.
 "In the absence of a definition contained in the policy, and/or overriding public policy, or statutory provision, the words mean what an 'ordinary person' would believe those words would mean. No overriding public policy or statutory provision was shown by Defendant to apply in this case. Having so stated, this court finds as a matter of law that the language employed by Plaintiff in its insurance policy is clear and unambiguous. The policy before the court clearly excludes from its coverage a loss resulting from circumstances such as those presented in this case.
"V. CONCLUSION
 "There being no genuine issue of material fact before the court, the merits of this case are fully adjudicated. It is ORDERED, ADJUDGED, and DECREED that judgment is rendered for Plaintiff on its Rule 56 motion. Under the terms of the contract, Plaintiff has no obligation to compensate or indemnify Defendant for any damages it may have suffered due to the loss of the Allegro [motor home]."
Without necessarily agreeing with the totality of its holdings, we affirm the judgment of the trial court.
On appeal, Liggans presents the issue whether the trial court erred in granting John Deere's motion for summary judgment, i.e., whether the trial court erred in concluding, as a matter of law, that the insurance policy's "false pretenses" exclusion was valid and applicable, thus precluding recovery for the "theft" loss claimed by Liggans.
Liggans, in its response to John Deere's motion for summary judgment and John Deere's supporting brief and affidavit, did not "set forth, by affidavit or otherwise, sufficient facts to show a genuine issue [of material fact] for trial" (Rule 56, A.R.Civ.P.; Gallups v. Cotter, 534 So.2d 585, 589 (Ala. 1988)), and the trial court correctly held that the facts were without dispute. Thus, John Deere met its burden of proving the first requirement for summary judgment: the absence of a genuine issue of material fact. Rule 56(c). "As with any issue on summary judgment, if the facts are not in dispute, a question of law is presented to be decided by the trial court." Kitchensv. Winn-Dixie Montgomery, Inc., 456 So.2d 45 (Ala. 1984). See, also, Garrigan v. Hinton Beef Provision Co., 425 So.2d 1091
(Ala. 1983).
Having concluded that there was no factual controversy to be resolved, we must now consider the second requirement for summary judgment: whether the uncontroverted facts entitled John Deere to a judgment as a matter of law. Rule 56(c);Tripp v. Humana, Inc., 474 So.2d 88 (Ala. 1985). That is, was the trial court correct in its legal conclusions on which it based its interpretation of the insurance policy's provisions of coverage and exclusion?
We first note that the portion of the trial court's order entitled "LEGAL FINDINGS" deals with basic principles of contract construction and interpretation. These "findings," perhaps more properly called "conclusions," taken as a general statement of the law, are correct. Too, we note that the trial court was correct in holding the contract of insurance here to be clear and unambiguous.
Liggans argues, however, that because the policy allows coverage for, but does not define, "theft," the controlling definition for that term must be taken from Alabama's Criminal Code. Liggans maintains that because the amended Criminal Code (specifically, Ala. Code 1975, § 13A-8-2) defines "theft of property" to include obtaining the property "by deception," the loss in the instant case falls within the category of "theft" (a covered loss under the policy), and not under the category of "false pretenses" (an excluded loss under the policy). *Page 571 
We need not, however, reach the question of the applicability of statutory criminal law definitions to insurance contracts.
Our analysis of this final question — whether the loss of the R.V. to the unidentified couple is covered by the policy as a loss due to "theft" or is excluded from the policy's coverage as a loss due to "false pretenses" — is aided by the following statements from Appleman's treatise on the law of insurance:
"§ 7383. Construction as an Entirety.
 "It has been stated that a contract of insurance, being the law between the parties, should have every stipulation construed as written. It being presumed that every condition was intended to accomplish some purpose, it is not to be considered that idle provisions were inserted. Each word is deemed to have some meaning, and none should be assumed to be superfluous. . . .
 ". . . The meaning of a particular word or phrase is not determined by considering the word or phrase in isolation, but by reading the policy as a whole, and the entire text and subject matter of the contract of insurance will be considered in determining the meaning and application of specific words and expressions. . . .
"§ 7384. Controlling Force of Terms Used in Policy
 "An insurance contract is to be construed according to the sense or meaning of the words which are used in the contract. . . .
 ". . . Ordinarily, nice distinctions and refinements are not favored. It is not a dictionary definition which is desired, nor the technical, philosophical, or scientific meanings of the terms, nor a restricted meaning acquired in legal usage. It is, rather, the meaning which would be attached by an ordinary person of average understanding if purchasing insurance. An insurance policy should be read as a layman would read it and not as it might be analyzed by an attorney or insurance expert."
Appleman, Insurance Law and Practice, Rev.Vol. 13, §§ 7383, 7384, pp. 30-103 (1976) (emphasis supplied).
While the policy does not define "theft," the "garagekeeper's" policy's use of the word "theft" clearly contemplates that "theft" will be understood according to "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." Id. On the other hand, the "exclusions" portion of the policy specifically defines a loss due to "false pretenses" as occurring when "someone caus[es Liggans] to voluntarily part with [an R.V.] by trick or scheme or under false pretenses."
The unambiguous policy language makes a clear distinction between "theft" (a covered loss) and "false pretenses" (a non-covered loss), and the facts of the instant case fall squarely within the latter definition. There is no need to refer to statutory criminal definitions to determine that the loss of the Allegro motor home by Liggans due to the "trick, scheme, or false pretenses" of the unidentified couple is excluded by the terms of the policy. The trial court correctly held that John Deere had no obligation to pay the claim for that loss.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.