**ALLSTATE INSURANCE COMPANY,**
Plaintiff,

v.

**Margaret SELLERS–BOK, M.D., and Michael H. McDuffie,**
Defendants.

Civil Action No. 96–A–050–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 23, 1996.

Albry J. Peddy, Michael B. Walls, Birmingham, AL, for plaintiff.

Von Memory, Joseph B. Lewis, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on the Motion for Summary Judgment filed by Allstate Insurance Company ("Allstate") on July 19, 1996.

On January 10, 1996, Allstate filed this lawsuit under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration from this court that it has no duty to defend and indemnify Margaret Sellers–Bok, M.D. ("Dr. Sellers–Bok") in a pending lawsuit brought by Michael H. McDuffie ("McDuffie") and his minor child. Named as defendants in the cause before this court were Dr. Sellers–Bok and McDuffie.

The lawsuit brought by McDuffie and his minor child include the following eleven counts: abuse of process; malicious prosecution; libel; slander; invasion of privacy; intentional infliction of emotional distress; outrage; filing of a false report; malpractice; breach of a fiduciary duty; and civil conspiracy. Allstate contends that these claims are not covered by its insurance policy with Dr. Sellers–Bok.

The court has jurisdiction on the basis of diversity of citizenship. *See* 28 U.S.C. 1332.

For the reasons that follow, the court finds that the Motion is due to be GRANTED.

1. McDuffie has amended his complaint four times. McDuffie filed the first amendment on December 20, 1994, the second on July 25, 1995,

### II. FACTS

Submissions before the court establish the following facts:

Allstate is an Illinois insurance company doing business in Alabama. Dr. Sellers–Bok, a psychiatrist, is an Alabama resident. McDuffie is also an Alabama resident.

### A. The McDuffie Case

On August 29, 1994, McDuffie brought an action, No. CV 94–1772–G, against Dr. Sellers–Bok and others in the Circuit Court of Montgomery County, Alabama ("the *McDuffie* case").[1] On December 20, 1994, McDuffie amended his complaint by substituting McDuffie's minor child for McDuffie as plaintiff in Counts Nine and Ten.

On October 14, 1993, Ada Lee Williams ("Williams") and Bonita Cseh ("Cseh") took McDuffie's minor child to visit Dr. Sellers–Bok at her office. As a result of the visit, Dr. Sellers–Bok concluded that McDuffie sexually abused his minor child. Dr. Sellers–Bok then published these findings in a report. Several months later, the Montgomery County District Attorney's Office brought criminal charges of sexual abuse against McDuffie. On July 6, 1994, the State of Alabama moved to nolle pros the prosecution's case, and the court subsequently dismissed the charges with prejudice.

In Count One of the complaint by McDuffie and his minor child, McDuffie claims abuse of process. Specifically, McDuffie claims that Dr. Sellers–Bok, Williams, Cseh, and in possible concert with others, "and with great animus, malice, and forethought, intentionally brought forth in the Circuit Court of Montgomery, Alabama false allegations against him for the purpose of securing a false criminal indictment, conviction and sentence." McDuffie maintains that those criminal charges, which alleged that McDuffie sexually abused his minor child, "were false, fictitious, vicious, malicious, fabricated and orchestrated." McDuffie also claims that Dr. Sellers–Bok, "while acting in her capacity as a professional psychiatrist," pub-

the third on January 17, 1996, and the fourth on June 19, 1996.

lished a report based upon her findings concerning McDuffie's alleged sexual abuse of his minor child. McDuffie insists that the "report and findings were made based on the spurious and fraudulent allegations of [Williams and Cseh] and were made without the benefit of any competency testing on, or individual interviews with, [McDuffie's minor child]." McDuffie further claims that Dr. Sellers–Bok's "report did not reflect the input of previous psychologists, school teachers, day care workers, law enforcement officers, Department of Human Resources case workers, Sunshine Center counselors, Child Protect therapists, or of [McDuffie] himself, since none of these individuals were ever contacted." Additionally, McDuffie claims that Dr. Sellers–Bok, Williams, Cseh, and possibly others, retaliated by "manufactur[ing] criminal felony charges against him as a direct result of his [September 15, 1993] Motion for Ruling on Visitation. . . ."

In Count Two, McDuffie claims malicious prosecution. In particular, McDuffie claims that Dr. Sellers–Bok, Williams, Cseh, and in possible concert with others, and "with great malice, animus, and design, brought forth manufactured, slanderous, vicious and malicious allegations . . . that he had sexually abused his [minor child]." McDuffie asserts that these allegations were made without probable cause, and with the purpose of procuring a false criminal indictment, a false criminal conviction, and a wrongful prison sentence.

In Counts Three, Four, and Five, McDuffie claims libel, slander, and invasion of privacy, respectively. Specifically, McDuffie claims that Dr. Sellers–Bok, Williams, Cseh, and in possible concert with others, intentionally or negligently published a professional report, by oral and written communication, knowing, or when they should have known, that the "report contained false, inaccurate, scandalous, libelous, malicious, denigrating, vilificating, and derogating allegations which directly concerned [McDuffie]." McDuffie asserts that these allegations were made as statements of fact, severely damaging his reputation and subjecting him to public humiliation and significant economic, mental, and physical harm.

In Count Six, McDuffie claims intentional infliction of emotional distress. In particular, McDuffie claims that Dr. Sellers–Bok, Williams, Cseh, and in possible concert with others, intended ·to have McDuffie falsely indicted for a felony· offense of which he was totally innocent, to stand trial for that offense, and then to be sentenced to prison for at least twenty years.

In Count Seven, McDuffie claims outrage, alleging that Dr. Sellers–Bok, Williams, Cseh, and in possible concert with others, intentionally conspired against him in order "to force him to relinquish his legal and paternal right of visitation with his only child[,] and to secure against him a plenarily false criminal indictment, conviction, and prison sentence." McDuffie asserts that these persons, "either secured or attempted to secure perjured testimony through bribery, threats, and intimidation of potential witnesses." McDuffie also claims that Dr. Sellers–Bok, under the express instructions of Williams, Cseh, and possibly others, "committed deliberate professional malpractice and breached her professional fiduciary duty with respect to both his [minor child] and himself."

In Count Eight, McDuffie claims that Dr. Sellers–Bok "either negligently or intentionally manufactured and issued a false report against him. . . ." McDuffie insists that Dr. Sellers–Bok "had a professional duty to the public at large and . . . McDuffie, as a foreseeable, directly impacted father, to render a fair, competently researched, and qualified report." McDuffie asserts that Dr. Sellers–Bok breached her duty to both by publishing her report which did not state that "other possibilities, not involving sexual abuse, could have equally explained the minor child's behavior[,] i.e., being 'coached' and/or 'brainwashed.'" McDuffie maintains that Dr. Sellers–Bok "base[d] her report and conclusions on a ten minute 'interview' with the minor child, in the presence of the child's mother and grandmother (which violated basic psychological interviewing techniques), and was done by her own admission, merely to validate the assertions [of sexual abuse] made by [Cseh and Williams]." McDuffie further asserts that Dr. Sellers–Bok

[U]sed no methodological technique whatsoever[,]. . . . performed no competency testing whatsoever on the minor child, did not interview the minor child individually, did not even attempt to seek verification of the serious allegations involved, and did not contact previous psychologists, school teachers, day care workers, law enforcement officers, Sunshine Center counselors, or Department of Human Resources case workers who were familiar with the case.

In Count Nine, McDuffie's minor child claims malpractice. Specifically, the minor child claims that Dr. Sellers–Bok, "while acting in the capacity as a professional psychiatrist, published a [report] based upon her alleged findings concerning her possible sexual abuse." The minor child asserts that the "report was done in bad faith and exhibited no methodological investigative technique whatsoever." The minor child also claims that Dr. Sellers–Bok "breached her professional duty to her by not performing any competency testing whatsoever on her, and by not interviewing her individually prior to the completion of her iniquitous report." Moreover, the minor child asserts that Dr. Sellers–Bok breached her professional duty to her "by not contacting any of the previous psychologists, school teachers, day care workers, Sunshine Center counselors, or Department of Human Resources case workers." The minor child also asserts that Dr. Sellers–Bok "did not contact [McDuffie], the alleged perpetrator, or any Alabama law official as the law of Alabama required her to do. . . ."

In Count Ten, McDuffie's minor child claims breach of a fiduciary relationship, stating that Dr. Sellers–Bok "entered into a professional, confidential, and fiduciary relationship with her." The minor child asserts that Dr. Sellers–Bok's personal relationship with Williams, Cseh, and possibly others "created an inherent bias which adulterated any illusion of objective analysis with respect to herself." The minor child further asserts that Dr. Sellers–Bok "breached her professional and fiduciary duty to her by the omission of any competency testing, individual interviews, or external verification of any

incriminating statements, prior to the release of her iniquitous report."

In Count Eleven, McDuffie claims a civil conspiracy. In particular, McDuffie claims that Dr. Sellers–Bok, Williams, Cseh, Dr. William M. Cseh ("Dr. Cseh"), and in possible concert with others,

[C]onferred, confederated, combined, and conspired . . . against [McDuffie:] to deprive him of his liberty and property by falsely and fraudulently denying him his right to see his minor child; by defaming him by means of libel and slander; by wrongfully invading his privacy; by filing a false report as againt [sic] him; by falsely and fraudulently causing legal process to be issued as against him; by falsely and fraudulently causing him to be indicted by a grand jury; and by falsely and fraudulently attempting to have him convicted of Class A felonies and imprisoned therefor.

McDuffie asserts that Dr. Sellers–Bok, Williams, Cseh, Dr. Cseh, and in possible concert with others, "conspired against him with great malice and animus to commit as against him the torts" set forth in the above counts. McDuffie further asserts that Dr. Sellers–Bok's initial examination of his minor child was negligent, and Dr. Sellers–Bok, Williams, Cseh, Dr. Cseh, and in possible concert with others, conspired among themselves to bring about that negligent act. McDuffie also claims that, after the examination, Dr. Sellers–Bok, Williams, Cseh, Dr. Cseh, and in possible concert with others "conspired among themselves to cause, by unlawful, oppressive, unethical, and immoral means, an evaluative report to be issued by [Dr.] Sellers–Bok, . . . constitut[ing] defamation of [McDuffie]."

### B. *This Cause of Action*

Allstate issued policy number 049–321755 ("the Policy") to Dr. Sellers–Bok covering certain claims arising during the policy period beginning October 13, 1993 through October 13, 1994. The Policy was terminated on November 25, 1993.

Coverage B, Part One of the Policy states that Allstate "will pay on behalf of persons insured all sums which they become legally obligated to pay as damages arising out of an

accidental event[2] [or] personal injury[3] ... that occurs while this policy is in effect." Coverage B, Part One also provides that Allstate "will defend any suit brought against persons insured seeking damages to which this Part applies, even if the allegations in the suit are groundless, false or fraudulent." The exclusions contained in Coverage B, Part One include, in part:

18. Any personal injury ... arising out of libel or slander or the publication or utterance of defamatory or disparaging material concerning any person ..., or in violation of an individual's right of privacy, made by or at the direction of any persons insured with knowledge that it is false.

21. Any accidental event [or] personal injury ... arising out of the rendering of or the failure to render ... professional services....[4]

### III. SUMMARY JUDGMENT STANDARD

The purpose of a motion for summary judgment is to challenge the contention that a case presents a genuine issue of material fact necessitating a trial. See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion." Id. at 323, 106 S.Ct. at 2553. Accordingly, summary judgment is appropriate if the movant demonstrates that the nonmovant has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S.Ct. at 2552; Tidmore Oil Co. v. BP Oil Co., 932 F.2d 1384, 1387–88 (11th Cir.), cert. denied, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the nonmovant to establish, with evidence beyond the pleadings, that a genuine issue material to the nonmovant's case does indeed exist. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991); see also Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The nonmovant "must do more than simply show

---

**2.** The Policy defines "accidental event," in part, as "an accident, including continuous or repeated exposure to the same conditions, resulting in bodily injury.... An accident cannot be intended or expected by any person insured, except for the use of reasonable force to protect persons or property." The Policy defines "bodily injury," in part, as "injury, sickness, or disease."

**3.** The Policy defines "personal injury," in part, as including the following offenses committed in the course of the insured's business: "malicious prosecution;" "libel, slander or the publication of any material damaging to anyone's reputation;" and "any writing or statement that violates anyone's right of privacy."

**4.** Although the "Professional Services Exclusion" does not apply to Incidental Medical Malpractice Liability, it is undisputed that Incidental Medical

Malpractice Liability ("IMML") does not cover Dr. Sellers–Bok. IMML provides, in part, that Allstate will

[P]ay on behalf of persons insured all sums which they become legally obligated to pay for bodily injury arising out of the rendering of or failure to render the following services while this policy is in effect:
1. Medical ... service or treatment ..., or
2. The furnishing or dispensing of drugs or medical ... supplies or appliances.

However, IMML does not apply to Dr. Sellers–Bok because IMML does not apply to insureds "engaged in the business or occupation of providing any of the services described in (1) and (2) above."

that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. It must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates*, 887 F.2d 1493 (11th Cir.1989). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## IV. DISCUSSION

### A. Alabama Rules for Interpretation of Insurance Policies

The Supreme Court of Alabama has consistently held that "insurance companies are entitled to have their policy contracts enforced as written...." *Gregory v. Western World Ins. Co.*, 481 So.2d 878, 881 (Ala.1985). They need not risk their terms to judicial interpretation or to strained constructions. *See id.* In other words, the provisions of an insurance policy must be given their ordinary, common meaning. *See Taber v. Nationwide Mut. Ins. Co.*, 447 So.2d 698, 700 (Ala.1984) ("It is the duty of the courts to take the words of an insurance policy as they are found in it, and as persons with usual and ordinary understanding would construe them when used to express the purpose for which they were employed") (quoting *Green v. Merrill*, 308 So.2d 702, 704 (Ala.1975)). The courts must give policy language "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance. An insurance policy should be read as a layman would read it and not as it might be analyzed by an attorney or insurance expert." *Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So.2d 567, 571 (Ala.1991) (quoting 13 Appleman, *Insurance Law and Practice* § 7384 (1976)).

### B. Application of the Policy to the Complaint's Claims

■ Applying the plain meaning to the terms of the Policy, it is clear that Allstate cannot be held liable for any of the claims asserted against Dr. Sellers–Bok in the *McDuffie* case. In their complaint, McDuffie and his minor child assert that Dr. Sellers–Bok is liable for personal injuries that they suffered. They claim that Dr. Sellers–Bok is liable for: abuse of process; malicious prosecution; libel; slander; invasion of privacy; intentional infliction of emotional distress; outrage; filing of a false report; malpractice; breach of a fiduciary duty; and civil conspiracy. These claims, however, are clearly excluded from coverage under the "Professional Services Exclusion" of the Policy.

■ As stated, the "Professional Services Exclusion" specifically excludes from coverage "Any accidental event [or] personal injury ... arising out of the rendering of or the failure to render ... professional services...." Although the Policy does not define "professional services," the term plainly means services relating to "[a] vocation or occupation requiring special, usually advanced, education, knowledge, and skill[, such as the] medical profession." *See Black's Law Dictionary* 1210 (6th ed. 1990). In any event, the complaint by McDuffie and his minor child repeatedly alleges that, at all relevant times, Dr. Sellers–Bok was acting in her capacity as a professional psychiatrist and that her work product and methods were in breach of professional and fiduciary duties owing to them by Dr. Sellers–Bok. Moreover, Dr. Sellers–Bok's written report appears on her professional letterhead and expressly states that "[McDuffie's minor child] was initially seen for psychiatric evaluation in my office on October 14, 1993...." The report sets forth the details of Dr. Sellers–Bok's "psychiatric examination" and findings thereon. The report also records Dr. Sellers–Bok's clinical impression, diagnosis, and recommendation for further treatment in the form of continued psychotherapy and psychiatric medications. Lastly, Dr. Sellers–Bok, after having recorded in the report her impression that the minor child's symptoms "reflect the emotional trauma that occurred as a result of earlier childhood sexual abuse and sexual boundary violations by her father," strongly recommends "that [McDuf-

fie's minor child] have no visitation of any kind with her father." Clearly, the written observations of Dr. Sellers–Bok, and its publication, constitute professional services of a psychiatrist.

All but conceding that the claims by McDuffie and his minor child are excluded by the "Professional Services Exclusion," Dr. Sellers–Bok maintains that the civil conspiracy claim, contained in Count Eleven, is covered by the Policy. However, the civil conspiracy claim relates to Dr. Sellers–Bok's alleged negligent examination of McDuffie's minor child, and her subsequently-prepared report which McDuffie claims constitute libel, slander, and invasion of privacy. Dr. Sellers–Bok's characterization of such acts as negligent or part of a conspiracy does not change the fact that these alleged acts relate to, and are premised upon, her status as a psychiatrist.

Each of Dr. Sellers–Bok's alleged acts representing the eleven counts in the *McDuffie* case are clearly professional in nature, requiring specialized knowledge, skill, and training. But for Dr. Sellers–Bok's professional status, she would not have been qualified to perform a psychiatric evaluation of McDuffie's minor child and record such findings, nor would she have been competent to publish her professional opinions. As such, this court finds that each claim advanced against Dr. Sellers–Bok in the *McDuffie* case is unambiguously excluded from the Policy's coverage because of the "Professional Services Exclusion."

Because this court finds that all claims brought in the *McDuffie* case are not covered by the Policy, it is unnecessary to consider other grounds of exclusion. As an aside, however, this court notes that the Policy also includes another exclusion. As stated, the Policy does not cover "[a]ny personal injury ... arising out of *libel* or *slander* or the *publication or utterance of defamatory or disparaging material* concerning any person ..., or in *violation of an individual's right of privacy,* made by or at the direction of any persons insured with knowledge that it is false." (Emphasis added). This exclusionary provision clearly precludes coverage for Counts Three (libel), Four (slander), Five

(invasion of privacy), and Eight (filing a false report).

## IV. CONCLUSION

This court concludes that the Policy in question does not cover the claims being asserted in the complaint submitted to this court from the *McDuffie* case and that Allstate is not obligated to indemnify Dr. Sellers–Bok on any of these claims. Additionally, this court finds that Allstate does not have a duty to defend Dr. Sellers–Bok in the *McDuffie* case because there is no coverage under the Policy for the claims asserted in the *McDuffie* case. Accordingly, the Allstate's Motion for Summary Judgment is due to be and is hereby GRANTED.

A separate Judgment will be entered in accordance with this Memorandum Opinion.