Defendant appeals from judgment on open account in the principal sum of $7,055.50 with interest from February 17, 1972, in the sum of $1,375.82 for a total of $8,431.32. We affirm.
Suit began against Tri-State Building Corporation, a Corporation and William Byron Folsom. The complaint claimed money for furnishing materials on account to Tri-State. It was averred that Tri-State was principally owned by Folsom and was so wholly controlled as to be a mere instrumentality through which Folsom conducted his individual business. It was requested that the corporate identity of Tri-State be disregarded and that Folsom be found to owe the account individually.
The case came on to be heard orally by the court without a jury. The evidence disclosed that Folsom organized Tri-State in 1962 with capital of $5,000.00. He owned 40% of the stock, his wife 20%, and two other 20% each. Folsom was the *Page 841 
president and executive officer. No minutes of corporate activities, stockholders' or directors' meetings were produced. Folsom handled the business and made corporate decisions without meeting or direction from the other stockholders who neither resided nor had business in Cullman. Tri-State constructed houses over a wide area of the state until some time in 1970 when it became relatively inactive because of the state of the mortgage market. Folsom never drew a salary nor were there dividends paid to the stockholders. The corporation was in existence in 1972 and at the time of trial in 1974-75, but it had no assets.
During its active years, materials were furnished by plaintiff to Folsom individually and to Cullman Building Supply Co. Cullman Building Supply Co. was the alter ego of Folsom and not a corporation. In December 1971 Folsom requested of plaintiff that the account with Cullman Building Supply Co. be closed and the account be carried under the name of Tri-State Building Corporation. At that time, plaintiff's manager discussed with Folsom furnishing materials to Tri-State for residential construction in the Northwest or Culpepper subdivision in Cullman, Alabama. Folsom informed him that Tri-State owned the lots where the materials were to be used. The materials were furnished and were used in construction but were not paid for.
The evidence showed that the lots to which plaintiff delivered materials and supplies were at the time not owned by Tri-State but by Folsom and his wife. As best we can determine from the testimony, the scheme for securing funds to build at least one of the houses was as follows: Folsom and wife gave a mortgage on the lot to John Nesmith, who was allegedly to build the house as an employee for Tri-State; Nesmith took the note and mortgage from Folsom to the Bank and used it as collateral to secure construction funds; the house was built and sold by Folsom to a purchaser; the purchaser executed a purchase money mortgage to First Federal Savings and Loan; Folsom attended the closing of that loan as seller; he executed an affidavit that he was the owner and builder of the newly constructed residence; that he had contracted for all labor and material used in the construction and that all had been paid for in full; there was no mention that Tri-State Builders had been involved; the funds from the purchaser's mortgage were paid to Folsom; the lender was not informed that any contractor had been involved in any way.
Folsom, though chief executive officer of Tri-State professed to have no knowledge of the amount alleged to have been paid to Tri-State, nor of its distribution by Tri-State.
His testimony, though totally lacking in specificity, was that he regularly used his personal credit for the benefit of Tri-State; that he loaned it money and aided it in various ways without approval or authority of the directors or stockholders. There is no evidence that anyone benefited from the activities of Tri-State other than Folsom.
We conclude that the evidence supports the finding of the trial court that Tri-State Building Corporation was merely an instrument conceived by Folsom and used by him for his personal benefit. It may further be concluded from the evidence that the materials and supplies furnished by plaintiff were used by Folsom for the construction of a residence on his property and that he personally was enriched thereby.
It is the law that the legal fiction of separate corporate entity will not be recognized in equity where there is such unity of interest and ownership that the separate personalities of the corporation and the individual in control no longer exist. The fiction of corporate entity was not created to promote injustice and protect its owner from payment of just obligations. Forest Hill Corporation v. Latter *Page 842 Blum, 249 Ala. 23, 29 So.2d 298; C.E. Development Company v.Kitchens, 288 Ala. 660, 264 So.2d 510.
The question of whether the owners of a corporation have so abused the corporate privilege and manipulated it to make it a personal instrumentality is one of fact. The judgment of the trial court, entered after oral hearing, has the weight of a jury verdict. Forest Hill Corporation v. Latter Blum, Supra.
The evidence, with its reasonable inferences, supports the judgment. It is neither wrong nor unjust. We affirm.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.