**JEFFERSON PILOT BROADCASTING COMPANY, Plaintiff-Appellee,**

v.

**HILARY & HOGAN, INC., et al., Defendants-Appellants.**

No. 78–3207.

United States Court of Appeals, Fifth Circuit.

May 15, 1980.

See also, D.C., 458 F.Supp. 310.

J. Knox Argo, Montgomery, Ala., for defendants-appellants.

Edmon L. Rinehart, Montgomery, Ala., for plaintiff-appellee.

Before SIMPSON, HILL and HATCH-ETT, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Jefferson Pilot Broadcasting Co. [Pilot], appellee, contracted with Hilary & Hogan, Inc. [Hilary] to produce a television commercial. Pilot fully performed; Hilary accepted Pilot's performance and promptly became insolvent. Unpaid, Pilot brought suit in diversity, 28 U.S.C. § 1332(a) (1976),

against both Hilary and its two officer-shareholders, Messrs. J. Hilary Cox and J. Dan Hogan. The district court entered judgment for the contract price against all three defendants, thereby "piercing" the individual defendants' corporate "veil." *Jefferson Pilot Broadcasting Co. v. Hilary & Hogan, Inc.*, No. 78–28–N (M.D.Ala., filed Aug. 10, 1978) (F. Johnson, J.). Defendants appeal.

As at trial, appellants do not dispute that Hilary owes Pilot the damages sought. Appellants' sole defenses have been and are that (1) Pilot, as an unqualified foreign corporate plaintiff, was barred from bringing suit in Alabama; and that (2) in any event, Pilot has no claim against Hilary's officer-shareholders. We shall treat these contentions in turn.

■ Appellants' first defense derives from Ala.Code § 10–2–254 (Michie 1977), which renders "void" all "contracts . . . made or entered into in this state by foreign corporat[e] [plaintiffs] which have not qualified to do business in this state." This statute concededly comprises part of the "substantive" law that we must apply. 28 U.S.C. § 1652 (1976). *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949); *Associates Capital Services Corp. v. Loftin's Transfer & Storage Co.*, 554 F.2d 188 (5th Cir. 1977) (per curiam). The cited provision is, however, inapposite here because the subject contract unquestionably was "made" in North Carolina. Tr. 12. *See Lee v. Great Northern Nekoosa Corp.*, 465 F.2d 1132 (5th Cir. 1972). Appellants argue alternatively that, apart from the statute, Alabama "public policy" precludes enforcement of Pilot's claim since *part* of the work was performed in Alabama. Here again, recognizing that the forum state's "public policy" forms part of the applicable "substantive" law in diversity cases, *see Angel v. Bullington*, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); *Richland Development Co. v. Staples*, 295 F.2d 122 (5th Cir. 1961), the proferred "policy" is inapposite here. "[C]ontracts made by foreign corporations without the State of Alabama and which are not to be performed

*wholly* within the state are not affected by the failure of such corporation to [qualify] . . . ." *Franklin Life Insurance Co. v. Ward*, 237 Ala. 474, 187 So. 462 (1939) (emphasis added). We hold, as a matter of Alabama state law, that Pilot's status as an unqualified foreign corporate plaintiff poses no bar to its maintenance of the instant lawsuit. This conclusion naturally pretermits consideration of any supposed burden on interstate commerce. *Compare Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974); *Foxco Industries, Ltd. v. Fabric World, Inc.*, 595 F.2d 976 (5th Cir. 1979).

■ Appellants' second line of defense is that Pilot may look solely to Hilary for payment of its claim. The question is whether the district court properly "pierced" the individual defendants' corporate "veil." The parties have, we think correctly (if fortuitously so), assumed that Alabama law controls this question. As in all diversity cases, we are bound by the forum state's choice-of-law rules. *See Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Alabama continues to follow a jurisdiction selecting approach to choice-of-law, *see Griese-Traylor Corp. v. First National Bank*, 572 F.2d 1039 (5th Cir. 1978), which was the methodology employed in the Restatement of Conflict of Laws (1934). In the absence of precedent, as here, the first Restatement provides a reasonably reliable basis for hypothesizing which law Alabama courts would choose. Consistently with the first Restatement, we think that Alabama courts would look to the law of the incorporating state—here Alabama—in deciding whether to recognize or disregard a corporate entity. *See* Restatement of Conflict of Laws § 154, Comment a (1934).

■ Under Alabama law, "[i]n order for a corporation to be accorded treatment as a separate legal entity, it must exist and function as such . . . . A court of equity looks through form to substance." *Lyons v. Lyons*, 340 So.2d 450, 451 (Ala.Civ. App.1976). But while "substance" is thus essential to corporate status, it does not

assure it. "The fiction of the corporate entity was not created to promote injustice and protect its owner[s] from payment of just obligations." *Tri-State Building Corp. v. Moore-Handley, Inc.*, 333 So.2d 840, 841 (Ala.Civ.App.1976). Individual liability will be imposed when, through "abuse" or "manipulation," *id.* at 842, "the corporate form is . . . used to *evade* personal responsibility." *Cohen v. Williams*, 294 Ala. 417, 318 So.2d 279, 281 (1975) (emphasis added).

Within the preceding legal framework, the district court properly entered judgment against appellant Cox. Hilary's present insolvency stems largely from self-dealing transactions in which Cox, Hilary's president and majority shareholder, caused Hilary gratuitously to "loan" tens of thousands of dollars to Cox's wholly owned corporation, Hilary Productions, Inc. [HP]. Although carried on Hilary's books as assets, the HP "loans" never had any prospect of repayment. Cox had contributed HP's clients as consideration for his Hilary shares; HP's continued existence ostensibly was to serve Hilary's in-house production needs. But for all of Hilary's capital "transfusions," the record fails to disclose any product or value delivered from HP to Hilary, or indeed that HP was anything other than a defunct shell. The "loans" constituted, in substance, asset transfers from Hilary to HP, reflecting the grossest of interest conflicts and apparent breaches of fiduciary duty. Their effect was to render Hilary effectively judgment proof, denuding it of assets while HP's debts—many of which Cox personally guaranteed—were paid. In these circumstances, we have no trouble finding that Cox manipulated Hilary's corporate form so as to evade its just debts, sufficient in equity to hold him personally accountable to Pilot here. *Cf. Cohen v. Williams*, 294 Ala. 417, 318 So.2d 279 (1975) (personal liability sustained where corporation dissolved for purpose of avoiding judgment debt).

We feel considerably different, however, about appellant Hogan. He had no responsibility for Hilary's financial affairs. The record does not reflect that he knew of the HP "loans" or in any way benefited by them. Unlike Cox, who contributed no money for his Hilary shares, Hogan here stands to lose his entire capital contribution of some $20,000. Although represented before us by a single attorney, it is apparent that Hogan's interests diverge substantially from Cox's. In any event, the record contains no evidence that Hogan abused or manipulated Hilary's form, and we reverse that portion of judgment that holds him personally liable to Pilot.

AFFIRMED IN PART; REVERSED IN PART.