The legal question presented here is one of first impression in the state insofar as we can determine, and that question is whether a "corporate veil" can be pierced in order to trigger an exclusion of coverage in an automobile liability insurance policy.
This question arises out of a declaratory judgment action in which the trial court found the policy exclusion applied; therefore, the court found that the carrier was relieved of any duty or obligation to provide a legal defense for the insured or pay any judgment rendered against its insured. The controversy originated out of an automobile accident involving the insured and an employee of the closely held corporation of which the insured was the president and controlling stockholder.
The specific facts are as follows: appellant Bobby J. McKissick operated a contracting business under the name County Line Builders, Inc. McKissick is the president of County Line Builders. He owned 98 per cent of the outstanding shares of stock, and admitted to controlling the daily operation of the business. No minutes of any shareholder or director meetings of County Line Builders appear in the record. Neither does any positive evidence appear in the record that McKissick commingled the corporation's funds with his own personal funds. The business's headquarters are in Prattville.
Following Hurricane Frederic's devastation of the Mobile area, McKissick went to the port city and engaged in construction repair work. County Line Builders did work in Mobile during the late fall of 1979 and into the early days of January 1980. While in Mobile, McKissick drove a 1973 Dodge van on various construction repair jobs. The evidence shows that County Line Builders owned the van. During the time period County Line Builders did work in Mobile, McKissick travelled between the gulf and his home in Prattville.
On January 5, 1980, McKissick drove to Mobile in a 1979 Ford Thunderbird. Auto-Owners Insurance Company, the appellee, insured the Thunderbird. The policy named McKissick's wife, Frances McKissick, the car's owner, as the primary insured. The policy also covered McKissick.
Gerald Gray accompanied McKissick to Mobile. County Line Builders employed Gray at various times and he had worked with McKissick for the company in the Mobile area.
The facts surrounding the accident are as follows: McKissick and Gray went to Mobile in the Thunderbird in order to bring the Dodge van back to Prattville, but when they arrived in Mobile, they discovered that the van needed repairs. In fact, the van was so much in need of repairs that it was *Page 1032 
impossible for them to drive the van. In order to get the van back to Prattville, McKissick decided to tow it behind the Thunderbird automobile.
McKissick and Gray hooked a chain between the rear of the Thunderbird (the insured automobile) and the front end of the van. On the return trip, McKissick drove the Thunderbird, and Gray sat in the van, and they proceeded north with Gray guiding the van behind the Thunderbird. At some point along Interstate 65, a tire on the van blew out. When McKissick saw, in his rear view mirror, the tire blow, he slammed on the automobile's brakes; the van then crashed into the Thunderbird and turned over. Gray was thrown from the flipping van.
Auto-Owners Insurance, insurer of the Thunderbird, filed a declaratory judgment action in the circuit court of Autauga County, in which it alleged that the policy on the Thunderbird did not cover any damages or injuries arising from the accident. The company cited the following portions of its policy as controlling on the issue of its coverage:
 "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of:
"A. bodily injury or
"B. property damage
 neither expected nor intended from the standpoint of the insured and arising out of the ownership, maintenance or use, including the loading or unloading thereof, of the automobile.
"* * *
 "Coverages A and B shall not apply: (b) to liability of the insured for bodily injury to any employee of the insured arising out of and in the course of his employment by the insured other than domestic employment if benefits for such domestic employment are neither payable nor required to be provided under any workers `Compensation Law.'"
After the filing of the declaratory judgment action, Gerald Gray filed a motion to intervene and also an intervenor's complaint. He alleged that if the trial court found Auto-Owners Insurance was not obligated to provide coverage, then the uninsured motorist benefits under the policy applied to him. The trial court allowed Gray to intervene.
Auto-Owners Insurance maintained in the trial court that at the time of the accident, McKissick employed Gray; McKissick maintained that Gray worked for County Line Builders, not for him personally. Auto-Owners Insurance further asserted that McKissick was the alter ego of County Line Builders. The trial court agreed with the carrier, "pierced the corporate veil," and held that McKissick personally employed Gray, and, therefore, the employee exclusion provision in the policy applied, and Auto-Owners Insurance had no duty to defend or make payments to the policyholder. McKissick appeals from that order. We reverse.
"A corporation is a distinct and separate entity from the individuals who compose it as stockholders or who manage it as directors or officers." Read News Agency, Inc. v. Moman,383 So.2d 840, 843 (Ala.Civ.App. 1980); Cohen v. Williams, 294 Ala. 417, 318 So.2d 279 (1975). "[A]s a matter of general corporate law our decisions hold that he who seeks to have the corporate cloak set aside must either demonstrate fraud or show that the recognition of the corporate form will result in injustice or inequitable consequences." 383 So.2d at 844; C.E. DevelopmentCo. v. Kitchens, 288 Ala. 660, 264 So.2d 510 (1972).
Before Auto-Owners Insurance could "pierce the corporate veil" it had to show that McKissick had fraudulently used County Line Builders to escape some personal liability. Auto-Owners claims that it showed that McKissick owned most of the corporation's stock, and the corporation held few, if any, shareholders' or directors' meetings; therefore, Auto-Owners Insurance asserts that because McKissick owned 98 percent of the corporation's stock, and because he exercised control over the affairs and operations of the business, County Line Builders was his alter ego. *Page 1033 
A court may "pierce the corporate veil" and declare a stockholder or officer the corporation's alter ego when evidence is present that the stockholder or officer used the corporate form to escape personal liability. Alorna CoatCorporation, Inc. v. Behr, 408 So.2d 496, 498 (Ala. 1981). The law will not recognize the legal entity of a corporation in equity when the controlling shareholder or officer creates the corporation "to promote injustice and protect the owner from payment of just obligations." Tri-State Building Corporation v.Moore-Handley, Inc., 333 So.2d 840, 841 (Ala.Civ.App. 1976).
In a closely held corporation, it is not unusual for the majority stockholder to control the entity's operation. The fact that McKissick controlled his business does not make that corporation such a sham that Gray would be an "employee" of McKissick instead of the corporation, so that the exclusion in McKissick's policy would apply.
As we stated earlier, we have not found a case in which a "corporate veil" has been pierced to make an employee of a corporation an "employee" of an individual insured in order to deny coverage under the policy issued to the individual insured.
After reviewing the record, we are constrained to hold that the record contains insufficient evidence that McKissick formed County Line Builders to escape personal liability for tort damage claims involving the Thunderbird automobile.
We do not hold, however, that an insurance company would in all cases be prevented from showing that an employee of a corporation was, in fact, an employee of an individual, but to so hold would require sufficient proof that the corporation was a mere sham.
The question then becomes: Was the clear effect of the "employee" exclusion to make an employee of a closely held corporation the "employee" of the insured? To answer this question, we apply principles of insurance law which state that provisions of insurance policies must be construed in light of the interpretation that ordinary men would place on the language used therein. Universal Underwriters Ins. Co. v.Marriott Homes, Inc., 286 Ala. 231, 238 So.2d 730 (1970).
The trial court erred in holding that County Line Builders was McKissick's alter ego; therefore, Auto-Owners Insurance Company cannot escape coverage of this accident based on the employee exclusion clause in the policy covering the Thunderbird automobile.
Our reversal makes it unnecessary to address the other two issues the parties raised: (1) Whether Gray was acting within the scope of his employment at the time of the accident, and (2) Whether the insurance policy's uninsured motorist provisions would apply.
For the reasons stated, the judgment of the court below is reversed.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.