**In re Doyle CHISM, Norma Chism, Debtors.**

**Bankruptcy Nos. 83–01066, 83–01067.**

United States Bankruptcy Court, M.D. Alabama.

July 19, 1985.

William C. Carn, III, Dothan, Ala., and Joe O. Sams, Jr., Columbus, Miss., for petitioners/debtors.

William G. Hause, Dothan, Ala., for Hill Petroleum Co., Inc.

Charles A. Ganus, El Dorado, Ark., and Kenneth Quattlebaum, Ozark, Ala., for Murphy Oil USA Inc.

David L. Carroll, Tuscaloosa, Ala., for Hunt Oil Co.

Jack Corbitt, Ozark, Ala., for Triangle Refineries.

Steven K. Brackin, Dothan, Ala., for Belcher Oil Co.

D. Coleman Yarbrough and Patricia Williamson, Montgomery, Ala., for American Petrofina Marketing, Inc.

## OPINION ON MOTION OBJECTING TO ALLOWANCE OF CLAIMS OF AMERICAN PETROFINA MARKETING, INC., HUNT OIL COMPANY, MURPHY OIL COMPANY, INC., BELCHER OIL COMPANY, TRIANGLE REFINERIES, INC., AND HILL PETROLEUM COMPANY, INC.

RODNEY R. STEELE, Bankruptcy Judge.

### STATEMENT OF THE CASE

Debtors Doyle and Norma Chism filed their petition in bankruptcy under Chapter 11 reorganization on August 23, 1983. They listed certain unsecured debts as disputed. These debts were to seven oil companies and totaled approximately $1.8 million.

The oil companies filed proofs of claim. The claim of one company, Placid Oil, was objected to on the grounds that it was late filed. That matter was disposed of in an earlier proceeding.

The claims originated as purchases of petroleum products made by Chism Transportation Company, Inc. and Chism Truck Center, Inc. Doyle Chism was the incorporator of these businesses, and at various times had served as director, officer and shareholder of them.

The oil companies were creditors of Chism Truck and Chism Transportation when the corporations filed for reorganization November 3, 1982. The plan which provided some payment to the oil companies was accepted by these creditors and confirmed by this court on December 9, 1983.

The oil companies subsequently sought to collect on the same debts from the Chisms as guarantors of the debts of the corporations. That action precipitated the filing for Chapter 11 relief and resulted in the instant motion.

The Chisms object to the remaining oil company claims on a variety of grounds which may be summarized as follows (see this court's pre-trial order of June 6, 1984):

1. Doyle and Norma Chism did not execute or authorize the execution of any agreement to guarantee the payment of the corporations' debts to the oil companies.

2. Doyle and Norma Chism did not use the corporate existence of either corporation for the purpose of perpetrating any fraud or subterfuge on the oil companies. No basis exists for asserting personal liability on the Chisms under equitable principles of alter ego or theories of piercing the corporate veil.

3. The oil companies' claims are banned by Alabama Code § 8-9-2 (1975) (Statute of Frauds).

The oil companies joined issue on these questions and asserted further that during the course of litigation in the U.S. District Court, Middle District of Alabama, a settle-

ment was reached in which Doyle Chism agreed to pay the oil companies. This agreement, it is asserted, was binding on the Chisms and the oil companies.

Trial was held to take testimony August 8, 1984. Presiding Bankruptcy Judge Leon J. Hopper died before rendering a decision. A second trial was held March 6, 1985, before the undersigned in Dothan, Alabama. Attorneys for all parties were invited to submit briefs or memoranda of law. The oil companies' brief raises the following two questions:

## ISSUES PRESENTED

Did an enforceable settlement agreement exist between Doyle and Norma Chism and the oil company creditors?

Should Doyle Chism on some alter ego theory be held liable for the corporate debts of Chism Truck Center, Inc. and Chism Transportation Company, Inc.?

## FINDINGS OF FACT

From voluminous testimony from many witnesses, depositions, exhibits and court records the court makes the following findings of fact.

1. No written settlement agreement between the oil companies and the Chisms was introduced into evidence in any of the proceedings before this court in either the corporate Chapter 11 or the individual Chapter 11 bankruptcies.

2. Doyle Chism was not the legal owner of either corporation at the time the debts were created. He had transferred all his stock to other persons, including some family members, although he retained some voting rights and a right to repurchase the stock for value.

3. Nor had Doyle Chism personally dealt directly with the oil companies to obtain delivery of oil products to the corporations.

4. Steve Czarnecki, son-in-law of Chism, testified that he, and not Doyle Chism signed Chism's name to a paper or papers which purported to guarantee payment of corporate debts to certain of the oil companies.

5. Steve Czarnecki testified that he had no written authorization or power to sign Chism's name.

6. The extension of credit by the oil companies to the Chism corporations did not benefit Doyle Chism personally.

7. There is no creditable evidence that Doyle Chism intended to use the corporate structures of Chism truck or Chism Transportation to evade payment of his personal obligations, or that the corporations were formed to perpetrate a fraud.

It is true that Doyle Chism was closely connected to both corporations. He organized them. He put a lot of money into them. He had operated truck stops for many years. His son-in-law was engaged in the day-to-day operation of the business. Doyle Chism enjoyed some "perks" from his position as founder: e.g., he got his personal cars and trucks fixed without charge; he got some free labor from the truck stop for his other enterprises. There is evidence that he, along with others, got some of the "side money"—unaccounted cash from the cash drawer at the truck stop. When he came to the truck stop,—a not infrequent occurrence—he was treated with that deference expected by the founder of the business. He knew that the corporations had arranged to buy oil from these oil companies.

But the evidence does not show that he engaged in the day-to-day operation of the business, nor does it show that he ever said or did anything personally, other than simply being the founder of the corporations, to lead the oil companies to believe that he would be personally responsible for the corporations' debts.

8. Doyle Chism was engaged in farming large tracts of land in Mississippi during the time the petroleum products were delivered to the Chism corporations. He also had other business interests, including motels and restaurants and night clubs in Mississippi.

## CONCLUSIONS OF LAW

1. In a Chapter 11 case, a claim is allowed unless the court, after notice and a hearing determines that the objection by the debtor fits one of the eight exceptions of § 502(b) of Title 11, USC. *In re Central Rubber Products, Inc.*, 31 B.R. 865 (Bkcy. Ct.Conn.1983).

■ When debtor objects to a claim, the burden of proof remains with the creditor to prove his claim after the debtor carries his burden of going forward to attack the prima facie validity of the claim established at the time of filing. *Matter of DeLorean Motor Co.*, 39 B.R. 157 (Bkcy.Ct.Mich.1984) Rule 3001(f).

■ 2. The exception raised here to the allowance of these oil company claims is found at § 502(b)(1). The claim is to be allowed unless, upon objection, it is established that

"(1) Such claim is *unenforceable* against the debtor and property of the debtor *under any agreement or applicable law* for a reason other than because such claim is contingent or unmatured."

Specifically debtors' objection to these claims is that because Doyle Chism did not sign any guaranty agreement, he cannot be bound to pay them. The Alabama Statute of Frauds specifically makes any "special promise to answer for the debt, default or miscarriage of another" void unless the agreement is in writing. Section 8–9–2 Code of Alabama, 1975, as Amended.

It must be concluded that this ground of objection is well taken. There is no writing signed by Doyle Chism which guarantees or authorizes another to guarantee on his behalf personally, any debt of the corporations to these oil companies.

Steve Czarnecki testified during trial that he had signed Doyle Chism's name to the guaranties. He further testified that he had no authority to act as agent for Doyle Chism, and that he had not told Doyle about the guaranty or that he had signed Doyle's name to them.[1] The guarantees were admitted forgeries.

3. But the oil companies' equitable argument is that Doyle Chism was alter ego of the corporations and so ought to be liable for their debts.

■ Although we think the language of the Alabama Statute of Frauds, Section 8–9–2 pretermits such an equitable argument, since the statute is broadly and clearly written, nevertheless we go into the "alter ego" theory far enough to conclude that it cannot apply here in any event.

4. A review of the Alabama cases shows two bases for making a shareholder personally liable for his corporation's obligations to its creditors.

a) Where he is cast with liability by statute, charter provision or personal agreement as an officer or director. *Whitehead v. Davidson Oil Co., Inc.*, Ala.1977, 352 So.2d 1339 at 1341.

b) Where the shareholder, through manipulation or abuse of his corporation as a separate entity, causes it to be unable to respond to its creditors for its debts. *Jefferson Pilot Broadcasting Co. v. Hilary and Hogan, Inc.*, (5th Cir.1980) 617 F.2d 133 at 135.

The cases under this second basis usually involve the following:

(1) A majority shareholder [2,5]

(2) Who is in control of his corporation[3,5,2]

---

1. Czarnecki testified that Doyle Chism "... said, if something like that has happened, somebody is in serious trouble." (R. 3–19 (August 1984)). Doyle Chism testified: "I said, 'Fellows, if ya'll done this, somebody is going to jail.'" (R. 70 (January 1985)).

2. *St. Paul Insurance Companies v. Talladega Nursing Home, Inc.*, (5th Cir.1979) 606 F.2d 631.

3. *Woods v. Commercial Contractors, Inc.*, (Ala. 1980) 384 So.2d 1076.

(3) Who so manipulates its affairs as to make it unable to pay its debts or some of them[4,5]

(4) Thus leaving the corporation with the debt owing, and

(5) The majority shareholder is not legally liable on the debt,[7,5] and has gained some personal benefit from the transaction.[6]

5. In the first instance, there is no showing in this case that Doyle Chism had any statutory duty to pay the debts of the two corporations. Cf. Code of Alabama, 1975, Section 10–2A–43.

Nor is there any evidence of a Charter provision binding Doyle Chism to pay corporate debts.

And there is no evidence of an agreement signed or even acknowledged by Doyle Chism to pay such debts. There were guaranty agreements which were admitted forgeries. But unless Doyle Chism acknowledged or adopted them in writing, they cannot be binding on him.[8] There is no such writing in evidence.

6. In the second instance, although Doyle Chism had a very real and continuing interest in the truck stop, the evidence is clear that he only had an option to become the majority stockholder again, and that while he had some say-so in the operation of the truck stop, he by no means controlled it or the other corporation. In fact, as he himself later discovered, the businesses were practically ruined by the poor management of Czarnecki and Mitchell. Cf. *Read News Agency v. Moman,* (CCA Ala.1980) 383 So.2d 840.

There is no evidence that Doyle Chism organized the corporations to take advantage of their creditors or that he so manipulated or abused the corporations or their activities as to cause them to be unable to pay their debts. The mismanagement of the Czarneckis and the Mitchells, and their abuses, resulted in that insolvency.

Doyle Chism obtained some benefits from the truck stop corporation, but it is not shown that he obtained it through any abuse or manipulation of the corporation. As the founder, he shared, perhaps illegally, with Czarnecki and Mitchell in the "side money" and in the use of some corporate services. But it further appears that over the course of the corporations' operations, Doyle Chism put into them far more money than he took out.

The withdrawal of the "side money" is not shown to have significantly impaired the corporations' ability to meet its obligations to these creditors.

In sum, the debtor here is not proved to be the alter ego of the two corporations which bear his name.

7. There is little creditable evidence to support any allegation of fraud on the part of Doyle and Norma Chism. It was not shown at trial that these debtors knew that the oil companies were relying on the personal worth of debtors under circumstances which required debtors to take some action.

■ 8. The question of a settlement, binding on debtors must be decided adversely to the oil company claimants.

The validity or enforceability of a settlement agreement in court proceedings is regulated generally by State law. *Wong v. Bailey,* (11th Cir.1985), 752 F.2d 619.

And in Alabama, an agreement not in writing made by parties in an entirely different cause of action in another court and not in open court for the record is an agreement banned by rule and applicable law. That rule inhibits enforcement of private agreements not in writing between counsel or parties. Code of Alabama, 1975, Section 34–3–21, Alabama Rules of Appellate Procedure, Rule 47;[9] *Crawford v.*

---

4. *Alorna Coat Corp. v. Behr,* (Ala., 1981) 408 So.2d 496; Cf. *Forester and Jerue Inc. v. Daniels,* (Ala., 1982) 409 So.2d 830.

5. *Cohen v. Williams,* (1975) 294 Ala. 417, 318 So.2d 279.

6. *Tri-State Building Corp. v. Moore Handley, Inc.,* (CAA Ala.1976) 333 So.2d 840.

7. *Paddock, Smith and Aydlotte v. WAAY Television,* (CAA Ala.1982) 410 So.2d 106.

8. Code of Alabama, 1975, Section 8–9–2.

9. This appellate rule, of particular application in Alabama Appellate Courts, would be, a fortiori,

*Tucker, et al,* 1953, 258 Ala. 658, 64 So.2d 411; *Anonymous v. Anonymous,* (Ala. 1977), 353 So.2d 515. Such a holding comports with general statute of frauds law.

In this case, we cannot conclude that the notation by a United States District Judge's secretary that a matter is "settled" is any written proof of the settlement or of the terms of the settlement. It is certainly not made in open court. The settlement, if there was one, could as easily have been an agreement to simply dismiss the proceeding.

An appropriate order will enter.

applicable in any court applying Alabama law,    where lower court settlements are in question.