**SOUTH ALABAMA PIGS, LLC, Plaintiff,**

v.

**FARMER FEEDERS, INC., et al., Defendants.**

South Alabama Pigs, LLC, Plaintiff,

v.

Farmer Feeders, Inc., et al., Defendants.

Nos. CIV.A. 02–T–1413–N, CIV.A. 02–T–1415–N.

United States District Court, M.D. Alabama, Northern Division.

Feb. 9, 2004.

Rhon E. Jones, Larry A. Golston, Jr., Beasley, Allen, Crow, Methvin, Portis & Miles, PC, Montgomery, AL, Michael E. Jones, Jones & Sport, Luverne, AL, for Plaintiff.

Joseph Lister Hubbard, R. Brooke Lawson, III, Wyndall A. Ivey, Capell Howard, PC, Montgomery, AL, C. Jeffery Ash, Larry W. Harper, Kathryn L. Harman, Porterfield, Harper & Mills, P.A., Birmingham, AL, for Defendants.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff South Alabama Pigs, LLC (Pigs, LLC) brought these lawsuits in state court against individual defendants Dennis McCool (McCool) and Scott Benton (Benton) and corporate defendants Farm Feeders, Inc. (Farm Feeders), Audubon Wholesale Vet Supply, Inc. (Audubon Wholesale), and Suidae Technology, Inc. (Suidae Tech), alleging fraudulent misrepresentation, fraudulent suppression, negligent misrepresentation, negligent or wanton hiring and supervision, breach of contract, and conspiracy to commit fraud. Defendants removed these cases to this Alabama federal court pursuant to 28 U.S.C.A. §§ 1332 (diversity jurisdiction) and 1441(b) (removal jurisdiction), where the cases were consolidated.

These cases are now before the court on motions to dismiss for lack of personal jurisdiction and alternative motions to compel arbitration, submitted by Benton, McCool, Farm Feeders, and Audubon Wholesale. Also before the court is Suidae Tech's motion to compel arbitration. For the reasons that follow, the motions to dismiss and motions to compel arbitration will be granted as to certain defendants and denied as to others.

## I. FACTUAL BACKGROUND

### A. The Defendants

*McCool, Audubon Wholesale, and Farm Feeders:* Audubon Wholesale sells livestock supplies; it is incorporated and has its principal place of business in Iowa; it has no customers in Alabama, has never transacted any business here, and has no ties here. Farm Feeders was incorporated in Iowa and is in the business of raising pigs. McCool is the owner of Audubon Wholesale and Farm Feeders. He has never been to Alabama; does not own property here; has never conducted business here for either Farm Feeders or Audubon Wholesale; and has never spoken to, corresponded with, or met with any employee, agent or representative of Pigs, LLC.

*Benton:* According to corporate documents, Benton holds the positions of secretary and director of Farm Feeders. Benton also stated in his affidavit that he is the president of Farm Feeders, though a 2002 corporate report indicates that McCool is the president.

*Suidae Tech:* Suidae Tech was incorporated and has its principal place of business is Batesville, Indiana. It is, among other things, a feed supplier.

### B. The Events

In January 2002, Benton (on behalf of Farm Feeders) and Paul Burton and Bob Chalus (on behalf of Suidae Tech) came to Alabama and approached Pigs, LLC about entering into an agreement to supply weaned pigs to Farm Feeders. At that time, Pigs, LLC had already contracted to supply weaned pigs to Farmland Industries. Pigs, LLC alleges that, during negotiations, these individuals represented to Pigs, LLC that Farm Feeders was in the business of finishing pigs; that it had the capability to raise weaned pigs to a specific weight for slaughter and sale; that, if defendants had to resell any pigs, they had numerous buyers willing to purchase the pigs and they were not dependent on any one buyer; and that McCool and Audubon Wholesale had personally guaranteed the agreement.

On February 14, Pigs, LLC repudiated its contract with Farmland Industries and entered into a four-year written contract with Farm Feeders.

In June, Farm Feeders notified Pigs, LLC that it would not purchase any addi-

tional pigs. Pigs, LLC later learned of Farm Feeders's alleged misrepresentations; specifically, according to Pigs, LLC, it discovered that Farm Feeders did not have multiple buyers willing to buy any surplus pigs; that Farm Feeders was not in the business of finishing pigs; that Farm Feeders was going to resell most or all of the pigs; and that it did not have financial backing from McCool or Audubon Wholesale.

## II. DISCUSSION

### A. Personal Jurisdiction over McCool, Benton, and Audubon Wholesale

 McCool, Benton, Audubon Wholesale move the court to dismiss these lawsuits against them on the ground that the court has no personal jurisdiction over them. In considering a defendant's motion to dismiss for lack of personal jurisdiction, the court must deny the motion if the plaintiff has alleged facts sufficient to support a reasonable inference that the defendant can be subject to the jurisdiction of the court. *Jackam v. Hospital Corp. of Am. Mideast,* 800 F.2d 1577, 1579 (11th Cir.1986); *Bracewell v. Nicholson Air Servs., Inc.,* 680 F.2d 103, 104 (11th Cir. 1982). A plaintiff need only establish a prima-facie case of jurisdiction, and may do so by presenting evidence sufficient to defeat a motion for judgment as a matter of law. *Perry v. Household Retail Servs., Inc.,* 953 F.Supp. 1378, 1380–81 (M.D.Ala. 1996) (DeMent, J.). The burden for overcoming a motion for judgment as a matter of law is the same as that for overcoming a motion for summary judgment; legally sufficient evidence must exist to create a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir. 1987). The court, in considering the motion, must take all allegations of the complaint that the defendant does not contest as true, and, where the parties' affidavits conflict, the court must construe all reasonable inferences in favor of the plaintiff. *Perry,* 953 F.Supp. at 1380–81.

 When a non-resident defendant challenges personal jurisdiction, the plaintiff must establish that personal jurisdiction over the defendant comports with (1) the forum State's long-arm statute and (2) the requirements of the due-process clause of the Fourteenth Amendment to the United States Constitution. *Williams Elec. Co. v. Honeywell, Inc.,* 854 F.2d 389, 391 (11th Cir.1988) (per curiam). Alabama's long-arm provision, Ala. R. Civ. P. 4.2(a), authorizes the assertion of personal jurisdiction to the limits of the United States Constitution; therefore, Pigs, LLC may establish the court's personal jurisdiction over McCool, Benton, and Audubon Wholesale by demonstrating that the requirements of federal due process are met. *Morris v. SSE, Inc.,* 843 F.2d 489, 494 n. 3 (11th Cir.1988); *Brock v. Hutto,* 617 F.Supp. 623, 629 (M.D.Ala.1985) (Thompson, J.). Due process requires that the defendant have had "minimum contacts" with the forum State, and that the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Burnham v.Super. Ct. of California,* 495 U.S. 604, 618, 110 S.Ct. 2105, 2114–15, 109 L.Ed.2d 631 (1990) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Both conditions must be satisfied to establish personal jurisdiction over a defendant.

### 1. Personal Jurisdiction over McCool and Audubon Wholesale on an Alter Ego Theory

Neither McCool nor Audubon Wholesale has had any contact with the State of Alabama, much less "minimum contacts."

Pigs, LLC contends that the court may nonetheless exercise personal jurisdiction over them on an alter ego theory of liability. Pigs, LLC maintains that Farm Feeders was the alter ego of McCool and Audubon Wholesale; thus, it argues that any activity by Farm Feeders in Alabama may be attributed to McCool and Audubon Wholesale establishing that they have had the minimum contacts necessary for personal jurisdiction.

### a. McCool

■ McCool is the owner of Farm Feeders and Audubon Wholesale. Generally, a corporation is a legal entity with a separate existence from its owner. *Backus v. Watson*, 619 So.2d 1342, 1345 (Ala. 1993). Thus, McCool may not be held liable for the actions of Farm Feeders unless the corporate form is disregarded. Under Alabama law, the corporate form may be disregarded, that is, the corporate veil pierced, when the corporation is the alter ego of its owner. Even when the corporation appears to be an alter ego, in order to pierce the corporate veil, "[t]here must be the added elements of misuse of control and harm or loss resulting from it." *Id.* at 1345; *see also Messick v. Moring*, 514 So.2d 892, 894–95 (Ala.1987).

■ "The mere fact that a party owns all or a majority of the stock of a corporation does not, of itself, destroy the corporate identity." *Simmons v. Clark Equip. Credit Corp.*, 554 So.2d 398, 400 (Ala.1989).[1] For corporations owned by an individual, domination of the corporation by the individual is not uncommon and is not the focus of the court's veil-piercing inquiry. "In a closely held corporation, it is not unusual for the majority stockholder to control the entity's operation. The fact

that [the majority shareholder] controlled his business does not make that corporation such a sham" that the corporate veil should be pierced. *McKissick v. Auto–Owners Ins. Co.*, 429 So.2d 1030, 1033 (Ala. 1983).

■ "The corporate veil may be pierced where a corporation is set up as a subterfuge, where shareholders do not observe the corporate form, where the legal requirements of corporate law are not complied with, where the corporation maintains no corporate records, where the corporation maintains no corporate bank account, where the corporation has no employees, where corporate and personal funds are intermingled and corporate funds are used for personal purposes, or where an individual drains funds from the corporation." *Simmons*, 554 So.2d at 401. Additionally, case law implies that an individual holding himself out as the same entity as the corporation or confusing the identities to the public may also lead the court to disregard the corporate form. *Cf., e.g., id.* (the corporate veil should not be pierced when the plaintiff "knew of the corporate existence and contracted with the corporation as a corporation. [Plaintiff] recognized a distinction between the corporation and [defendant.]").

■ Most of the factors listed in *Simmons* weigh against finding that Farm Feeders was McCool's alter ego. There is no evidence of subterfuge, the commingling of funds, or McCool draining funds from Farm Feeders, or that Farm Feeders failed to observe corporate formalities, meet the legal requirements of the corporate form, or maintain corporate records. Furthermore, there is evidence that Farm

---

1. In discussing the factors to consider when piercing the corporate veil on an alter ego theory, Pigs, LLC applied the standard for piercing the veil between a parent company and its subsidiary. This standard is not appropriate in the case of individually owned corporations, as discussed above.

Feeders had its own bank account and paid its debts from this account. In fact, only one factor could weigh in favor of piercing the corporate veil. Pigs, LLC contends that McCool represented to it that he and Farm Feeders were one and the same. If, in fact, he did make such a representation, this representation could be one factor in support of finding that Farm Feeders was McCool's alter ego, and the court could possibly exercise personal jurisdiction over McCool.

■ To support its argument that McCool represented that he and Farm Feeders are one and the same, Pigs, LLC submits a letter sent from Farm Feeders's bank, Farmers State Bank, to Pigs, LLC's bank.[2] McCool argues that this letter is inadmissible hearsay which cannot be considered by the court; Pigs, LLC counters that the letter is admissible as an admission by McCool's agent. McCool denies that Farmers State Bank acted as his agent, and he has sworn in an affidavit that at no time did he consent to or authorize the disclosure of financial information by Farmers State Bank to Pigs, LLC, nor did he ever authorize the bank as his agent.

In order for the court to consider the document an admission, it must first find, by evidence other than the letter itself, that Farmers State Bank was the agent of McCool. 29A *Am.Jur.2d Evidence* § 816 (2002) ("[A] statement offered under the rule of evidence governing statements arising out of agency or employment cannot itself establish the existence or scope of agency necessary for admission of the statement."); *Woodlawn Infirmary v. Byers*, 216 Ala. 210, 112 So. 831, 833 (1927)

("the rule is well established that the declarations or conduct of one professing to be an agent of another cannot be received as evidence against the principal without independent proof of the agency."). Pigs, LLC has offered no evidence, other than the letter itself, demonstrating that the bank was acting as McCool's agent; furthermore, Pigs, LLC's own conclusory allegations that the bank acted as McCool's agent are not enough to establish an agency relationship. Because Pigs, LLC has offered no evidence of an agency relationship, the court cannot find that the letter offered by Pigs, LLC is an admission. The letter, thus, may not be considered by the court in determining whether McCool represented to Pigs, LLC that he and Farm Feeders were the same entity.

Accordingly, the court rests its decision on consideration of the above-mentioned *Simmons* factors. Because these factors weigh against concluding that Farm Feeders was the alter ego of McCool, Farm Feeders's actions may not be attributed to McCool. Therefore, the court finds that McCool did not have the minimum contacts with Alabama necessary for the court to exercise personal jurisdiction over him.

**b. Audubon Wholesale**

■ For similar reasons, the court finds that Farm Feeders is not the alter ego of Audubon Wholesale. Audubon Wholesale is not the parent company of Farm Feeders and is unrelated to Farm Feeders. The only connection between Farm Feeders and Audubon Wholesale is that they are owned by the same person. This might provide a basis for finding that Farm Feeders was Audubon Wholesale's alter ego if McCool operated the compa-

**2.** McCool filed an objection to the letter on the grounds that it is unauthenticated, and that, because Pigs, LLC was not a party to the letter, it cannot represent what was or was not intended by the banks involved. Since the time this objection was made, the letter has been authenticated and an affidavit submitted by Pigs, LLC's bank to clarify the intention of the parties to the letter.

nies interchangeably. *See, e.g., Huntsville Aviation v. Ford,* 577 So.2d 1281, 1287–88 (Ala.1991) (finding alter ego status on the basis that the owner transacted business on behalf of one corporation but signed as president of his other corporation and when he represented that one of his corporations was part of another corporation). Pigs, LLC has offered no evidence which would lead this court to conclude that Audubon Wholesale and Farm Feeders were operated interchangeably. Consequently, Farm Feeders is not the alter ego of Audubon Wholesale. Audubon Wholesale is due to be granted.

### 2. Personal Jurisdiction over McCool and Benton on an Officer Liability Theory

 McCool and Benton move the court to dismiss the claims against them on the ground that the court may not exercise personal jurisdiction over them as individuals for actions taken in Alabama in their corporate capacity. When dealing with a corporate officer in his individual capacity, personal jurisdiction "may not be predicated upon jurisdiction over the corporation itself." *Thames v. Gunter–Dunn,* 373 So.2d 640, 641 (Ala.1979). To exercise jurisdiction over corporate officers, the officers must have engaged in some activity that would subject them to the State's long-arm jurisdiction. *Id.* at 642. Acts committed by an officer as an agent of the corporation will not subject the officer to personal jurisdiction, unless the corporate form was a sham or facade intended only to protect the individual. *Id.* Officers may be subject to personal jurisdiction, though, if they have committed torts in Alabama, regardless of whether they acted within their corporate authority at the time the tort was committed. *Candy H. v. Redemption Ranch, Inc.,* 563 F.Supp. 505, 513 (M.D.Ala.1983) (Thompson, J.). An officer who has never been in Alabama, nor conducted personal business in the state through an alter ego or through personal agents, may not be subjected to jurisdiction in Alabama. *Thames,* 373 So.2d at 643.

#### a. Benton

 Pigs, LLC has alleged that Benton committed various torts in Alabama, including fraudulent misrepresentation and suppression, and negligent misrepresentation. Benton acknowledges that he conducted business in Alabama on behalf of Farm Feeders and that it is out of this transaction that the current action arose. Benton contends, however, that he acted solely within his corporate capacity when conducting business in Alabama. Whether or not Benton acted in his corporate capacity when he committed the alleged tort is of no consequence. *Candy H.,* 563 F.Supp. at 513. Tortious conduct is enough to subject Benton to the court's personal jurisdiction. *Id.* Pigs, LLC has made out a prima-facie case of jurisdiction as to Benton, offering evidence sufficient to create a genuine issue that Benton committed a tort in Alabama. *Perry v. Household Retail Servs., Inc.,* 953 F.Supp. 1378, 1380–81 (M.D.Ala.1996) (DeMent, J.) (plaintiff may establish a prima-facie case of jurisdiction by presenting evidence sufficient to defeat a motion for judgment as a matter of law). Thus, Benton will not be dismissed at this time.[3]

#### b. McCool

 Pigs, LLC argues that Benton acted as McCool's agent when he allegedly

---

**3.** Of course, Benton may renew his personal-jurisdiction defense in a motion for summary judgment, at trial, and after trial.

committed the tortious acts in Alabama and that the court has jurisdiction over McCool because he is liable for the tortious acts of his agent. *See Shearson Lehman Bros., Inc. v. Crisp,* 646 So.2d 613, 618 (Ala.1994) (holding that a principal is responsible for the acts and agreements of its agents which are within the scope of the agency). "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." *Turner v. Deutz–Allis Credit Corp.,* 544 So.2d 840, 842 (Ala.1988) (quoting *Restatement (Second) of Agency* § 1 (1958)). The court has no evidence before it demonstrating that McCool manifested consent for Benton to act on his behalf and subject to his control, that Benton's actions were meant to benefit McCool, that McCool had the power to control Benton's actions, or that Benton consented to act as McCool's agent. Therefore, Pigs, LLC has failed to make out a prima-facie case of jurisdiction over McCool on this basis. McCool is due to be dismissed.

In sum, the court has found that Farm Feeders was not the alter ego of either McCool or Audubon Wholesale, and that Benton was not the agent of McCool; thus, McCool and Audubon Wholesale are due to be dismissed. Their alternative motion to compel arbitration is due to be denied as moot as well. Because Pigs, LLC has established a prima-facie case of jurisdiction over Benton, his motion to dismiss for lack of personal jurisdiction is due to be denied.

The remaining defendants are Benton, Farm Feeders, and Suidae Tech.

### B. Arbitration

Benton, Farm Feeders, and Suidae Tech move the court to compel arbitration pursuant to the arbitration clause contained in the contract between Farm Feeders and Pigs, LLC. Farm Feeders seeks enforcement of the clause as a party to the contract, while Benton and Suidae Tech seek to enforce the clause on theories of equitable estoppel and third-party beneficiary status.

### 1. Farm Feeders Ability to Enforce the Arbitration Clause

#### a. Void for Vagueness

■ Pigs, LLC maintains that the arbitration clause between it and Farm Feeders is so vague as to be unenforceable. It notes that the clause does not set forth a manner for selecting an arbitrator, does not state whether arbitration is binding, and only specifies that arbitration shall be "in the manner as allowed." Thus, Pigs, LLC concludes that the provision fails to include material terms and should be found unenforceable.

■ The failure to specify a manner for selecting arbitrators is not a ground for finding the clause unenforceable. Section 5 of the Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1–16, provides for the court to designate and appoint an arbitrator in cases where the means for selecting an arbitrator were not specified. 9 U.S.C.A. § 5. The court's ability to enforce the arbitration clause is also unaffected by the fact that the arbitration clause does not state whether arbitration is binding and only specifies that arbitration shall be "in the manner as allowed." When evaluating an arbitration provision, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Arbitration clauses as broad as

the one in this case have been upheld in other cases on the grounds that all issues should be resolved in favor of arbitration. *See Arons v. Lalime*, 1998 WL 912033 (W.D.N.Y.1998) (enforcing an arbitration clause which provided that "[a]ll disputes between the parties which cannot be resolved out of court by the parties should be submitted to the arbitration jurisdiction of the State of New York, U.S.A."); *Marzek v. Mori Milk & Ice Cream Co.*, 2002 WL 226761 (N.D.Ill.2002) (enforcing an agreement that the parties would arbitrate "any dispute—including but not limited to plaintiff's termination—arising under or involving the employment of the plaintiff"). Thus, the arbitration provision here is not so vague as to be unenforceable.

### b. Choice of Law and the Arbitration Provision

██ The arbitration clause provides that "the parties agree that should any dispute arise as to the terms or execution of the contract that they will submit the controversy to arbitration in the manner as allowed." The FAA governs contracts involving interstate commerce and provides that arbitration clauses in such contracts are "valid, irrevocable, and enforceable." 9 U.S.C.A. § 2. Alabama law governs contracts involving intrastate commerce and makes pre-dispute arbitration provisions unenforceable. 1975 Ala. Code § 8–1–41(3); *see also Old Republic Ins. Co. v. Lanier*, 644 So.2d 1258, 1260 (Ala.1994). The contract between Farm Feeders and Pigs, LLC was for the sale of pigs in Alabama to a buyer in Iowa and, thus, involved interstate commerce. The FAA applies and the arbitration provision is not unenforceable under Alabama law.

██ Pigs, LLC contends that the arbitration provision is unenforceable, regardless of the applicability of the FAA,

because the arbitration provision was actually an agreement by the parties not to arbitrate. Because the parties stipulated in the contract that it was governed by Alabama law, Pigs, LLC urges the court to interpret the words "in the manner as allowed" to mean, "in the manner as allowed by Alabama state law." Pigs, LLC argues that this is the "natural meaning" of the words in the contract, and it urges the court to adopt its interpretation of the arbitration clause because "[t]o hold otherwise would render one part [of the contract] or the other meaningless," and because the court should "not consider a part of an agreement to be meaningless where, as here, the language of the parts may be construed to give effect to each." *Sullivan, Long & Hagerty v. S. Elec. Generating Co.*, 667 So.2d 722, 725 (Ala. 1995).

██ In fact, however, this principle works against Pigs, LLC's argument. To interpret the arbitration clause as Pigs, LLC desires would be to render the clause meaningless. Pigs, LLC would have the court read the arbitration clause in the following manner: the parties agree to submit any dispute that arises to arbitration in the manner as allowed by Alabama law; however, because Alabama law does not permit arbitration, the parties agree not to arbitrate. According to Pigs, LLC's interpretation, the arbitration provision first expresses the parties' intent to arbitrate and then proceeds to nullify that intent. This interpretation of the choice-of-law and arbitration clauses would render the arbitration provision meaningless, and the court should "not consider a part of an agreement to be meaningless where, as here, the language of the parts may be construed to give effect to each." *Sullivan, Long, & Hagerty*, 667 So.2d at 725.

Pigs, LLC's argument fails for other reasons as well. First, the Supreme Court

expressly rejected a similar argument in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). There, the defendant argued that a choice-of-law provision negated elements of an arbitration provision because state law prohibited the award of punitive damages in arbitration. *Mastrobuono*, 514 U.S. at 57–58, 115 S.Ct. at 1215–16. The Court found that, where the arbitration provision specified that damages were a proper arbitration remedy, a choice-of-law provision could not be interpreted to waive the parties' ability to recover these damages. *Id.* Similarly, the arbitration provision here specifically expresses the parties' agreement to arbitrate and the choice-of-law provision cannot be interpreted to negate the parties' assent.

 Additionally, Pigs, LLC's argument is flawed because, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, 103 S.Ct. at 941. In accordance with this principle, and for the reasons above, the court rejects Pigs, LLC's argument that the choice-of-law section should be read with the arbitration provision to mean that the parties agreed not to arbitrate any disputes which might arise from the contract. To do so would render the provision meaningless and would be in contravention of federal policy. *See also Spurlock v. Life Ins. Co. of Virginia*, 2000 WL 1785300, *6–*7 (M.D.Ala.2000) (DeMent, J.) (finding that inclusion in arbitration provision of the phrase "unless unenforceable due to federal or state law" did not evince an intent by the parties to waive their right to arbitration).

The court finds that the parties to the contract have expressed their agreement to arbitrate in a valid arbitration provision; therefore, Farm Feeders's motion to compel arbitration is due to be granted.

### 2. Benton's and Suidae Tech's Ability to Enforce the Arbitration Clause

 Generally, a party cannot be compelled to arbitrate a dispute unless the party has entered an agreement to arbitrate. *Ex parte Stamey*, 776 So.2d 85, 88 (Ala.2000). Agreement is usually expressed by the signing of a contract containing an arbitration provision. *Id.* at 88–89. In certain circumstances, however, non-signatories to the agreement may enforce an arbitration provision. *Id.* at 89. Under a theory of equitable estoppel, a non-signatory may enforce an arbitration provision for "claims that are so 'intimately founded in and intertwined with' the claims made by the party resisting arbitration against a party that is a signatory to the contract." *Id.* A non-signatory third-party beneficiary may also compel arbitration when the court finds that the parties contemplated conferring the rights and benefits of the contract upon the third-party. *Id.; see also Yeomans v. Homes of Legend, Inc.*, 2001 WL 237313, *4 (M.D.Ala.2001) (DeMent, J.) (same).

Benton and Suidae Tech argue that, despite the fact that they were not parties to the agreement containing the arbitration provision, the court can compel Pigs, LLC to arbitrate its claims against them. Benton claims that he may enforce the arbitration provision on a theory of equitable estoppel, while Suidae Tech claims that it may enforce the arbitration provision as a third-party beneficiary to the contract.

### a. Benton's Ability to Enforce the Arbitration Clause on a Theory of Equitable Estoppel

 When a plaintiff relies on the terms of the agreement in its claims

against another party, it is estopped from repudiating the arbitration clause of the agreement. *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir.1993). This principle applies even when the party seeking arbitration is a non-signatory to the agreement, when the party was not specifically mentioned in the agreement, and when the plaintiff's claims are not strictly based on the contract. *Id.* at 757–58. The focus of the court's inquiry is, first, on the scope of the arbitration provision, and, second, on the relation between the claims and the contract.

First, the court examines whether the scope of the arbitration provision is broad enough to encompass the claims against the non-signatory. *Stamey,* 776 So.2d at 89; *Ex parte Napier,* 723 So.2d 49, 53 (Ala.1998). The arbitration provision in this case is extremely broad ("should any dispute arise as to the terms or execution of the contract that they will submit the controversy to arbitration in the manner as allowed") and is comparable to arbitration provisions in cases where non-signatories were allowed to enforce the arbitration clause under an equitable estoppel theory. *Napier,* 723 So.2d at 51 ("All disputes, claims or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration"); *Stamey,* 776 So.2d at 91 ("All disputes, claims or controversies arising from or relating to this contract or the parties thereto shall be resolved by binding arbitration."). Furthermore, the arbitration clause in this case is not only broad but also specifically contemplates Pigs, LLC's claim that Benton made fraudulent and negligent misrepresentations because these are disputes that have arisen "as to the ... execution of the contract." Therefore, the court finds that the arbitration clause in question is sufficiently broad to encompass Pigs, LLC's claims against Benton.

The court now turns to the second part of its inquiry: whether Pigs, LLC's claims against Benton are so "intimately founded in and intertwined with" Pigs, LLC's claims against Farm Feeders as to equitably estop Pigs, LLC from repudiating the arbitration provision as to Benton. *Stamey,* 776 So.2d at 92; *Napier,* 723 So.2d at 53; *Sunkist,* 10 F.3d at 757. The Eleventh Circuit Court of Appeals has found the requisite "intertwining" when non-signatory's actions are completely bound with those of a signatory. In *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753, 757 (11th Cir.1993), a parent company was sued over a contract between the plaintiff and the parent company's subsidiary. The parent had ceased operating the subsidiary independently and absorbed it into its own operations; consequently, all of the parent's actions were made on behalf of the subsidiary. Because the parent and subsidiary were, in effect, one and the same, the parent company was able to enforce the arbitration provision contained in the contract between its subsidiary and the plaintiff, although it was not a signatory to the contract. The court found that the integral relationship between the parent and its subsidiary equitably estopped the plaintiff from avoiding arbitration. *Id.* at 758.

Benton is an officer of Farm Feeders and, at all times pertinent to this action, was acting as a representative of Farm Feeders. Like the parent company in *Sunkist,* Benton had an integral relationship with Farm Feeders, did not act independently of Farm Feeders, and took all actions on behalf of Farm Feeders. Based on these circumstances, the court finds that Pigs, LLC's claims against Benton and Farm Feeders are so intertwined as to weigh in favor of estopping Pigs, LLC

from repudiating the arbitration clause as to Benton. Benton's motion to compel arbitration is due to be granted.

### b. Suidae Tech's Ability to Enforce the Arbitration Clause as a Third-party Beneficiary

Suidae Tech argues that, although it is a non-signatory to the contract, it is entitled to enforce the arbitration-clause provision against Pigs, LLC on a third-party beneficiary theory. Generally, a non-signatory to a contract may enforce it when the non-signatory is a third-party beneficiary. *Dyess v. Am. Hardware Ins. Group, Inc.*, 709 So.2d 447, 451 (Ala.1998). This contract principle applies to the enforcement of arbitration clauses as well. *Stamey*, 776 So.2d at 89. To enforce the arbitration provision on this theory, Suidae Tech bears the burden of demonstrating that the parties meant to bestow a direct benefit upon it when executing the contract. *Dyess*, 709 So.2d at 451. The intent of the parties can be determined by the language used in the contract. *Stamey*, 776 So.2d at 92.

Suidae Tech maintains that it was an intended third-party beneficiary of the contract because the contract specifically referred to Suidae Tech and conferred a benefit upon it. Paragraph 2 of the contract provides, in pertinent part, that "[a] networking service fee will be applied if and *only* if Producer opts out of the nutrition program of Suidae Technology." (Emphasis in original); and ¶ 16 provides that "Suidae Technology, Inc. will have the first option on all feed for the sows and pigs, if all conditions are met for the producer." These provisions specifically mention Suidae Tech and show a clear intent by the parties to confer a direct benefit on Suidae Tech through their contract. *See Stamey*, 776 So.2d at 91–92 (finding that contract meant to confer benefit on third-party when provisions indirectly referred to the third party); *Dyess*, 709 So.2d at 450–51 (finding arbitration clause could be enforced because the insurance policy "was written with the intent of directly benefitting people such as [plaintiff]"). Thus, Suidae Tech has met its burden and demonstrated that it is a third-party beneficiary to the contract; its motion to enforce the arbitration provision of the contract is due to be granted.

### III. CONCLUSION

The court lacks personal jurisdiction over defendants McCool and Audubon Wholesale, and retains personal jurisdiction over Benton, Farm Feeders and Suidae Tech. However, the arbitration clause in the contract between Farm Feeders and Pigs, LLC may be enforced by Benton, Farm Feeders, and Suidae Tech.

An appropriate judgment will be entered.

### JUDGMENT

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE as follows:

(1) The motion to dismiss, filed by defendants Dennis McCool, Scott Benton, and Audubon Wholesale Vet Supply, Inc. on January 17, 2003 (Doc. no. 3), is granted as to defendants McCool and Audubon Wholesale Vet Supply, Inc. and denied as to defendant Benton.

(2) Defendants McCool and Audubon Wholesale Vet Supply, Inc. are dismissed for lack of personal jurisdiction.

(3) The motion to compel arbitration and stay proceedings, filed by defendants McCool and Audubon Wholesale Vet Supply, Inc. on January 17, 2003 (Doc. no. 3), is denied as moot.

(4) The motions to compel arbitration and stay proceedings, filed by defendants Benton, Farm Feeders, Inc., and Suidae Technology, Inc. on January 17 and March 7 and 14, 2003 (Doc. nos. 3, 5, 12, & 16), are granted.

(5) Plaintiff South Alabama Pigs, LLC is compelled to arbitrate its claims against defendants Benton, Farm Feeders, Inc., and Suidae Technology, Inc., and the proceedings in this case are stayed pending arbitration.

The clerk of the court is DIRECTED to close this case administratively pending arbitration.