Progressive Specialty Insurance Company appeals by permission, pursuant to Rule 5, Ala. R.App. P., from the trial court's denial of its motion for a summary judgment. We answer the controlling *Page 1139 
questions of law presented by this appeal, reverse the trial court's judgment, and render a judgment in favor of Progressive.
 Facts and Procedural History
On October 28, 2003, Tammy Weaver struck Hannah Naramore with her car while Hannah, a pedestrian, was attempting to cross a street. It is undisputed that Weaver was an underinsured motorist. Stephanie Naramore, Hannah's mother, was the sole named insured on a Progressive automobile insurance policy.[1]
On July 8, 1999, when she was applying for the Progressive policy, Stephanie signed a form entitled "Rejection of Uninsured/Underinsured Motorist Coverage." The form states in its entirety:
 "I have been offered Uninsured/Underinsured Motorist Coverage up to an amount equal to the limits of the liability coverage and I reject the option to purchase any Uninsured/Underinsured Motorist Coverage. I understand that Uninsured/Underinsured motorist coverage would have protected me, my resident relatives, and occupants of a covered vehicle if any of us sustain bodily injury, including any resulting death, in an accident in which the owner or operator of a motor vehicle who is legally liable does not have insurance (an uninsured motorist) or does not have enough insurance (an underinsured motorist).
 "I understand and agree that this rejection of Uninsured/Underinsured Motorist Coverage shall be binding on all persons insured under the policy, and that this rejection shall also apply to any renewal, reinstatement, substitute, amended, altered, modified, or replacement policy with this company or any affiliated company, unless a named insured submits a request to add the coverage and pays the additional premium."
Stephanie's signature is found below this text next to the words, "Signature of Insured-Applicant."
Hannah was a minor at the time of the accident. Hannah's father, Stephen Naramore, as her natural father and next friend, sued Progressive, alleging that Hannah was entitled to recover uninsured/underinsured-motorist benefits under Stephanie's policy with Progressive.
Progressive moved the trial court for a summary judgment; the trial court denied its motion. Progressive, under Rule 5, Ala. R.App. P., petitioned this Court for permission to appeal from the interlocutory order denying its summary-judgment motion.See Rule 5(a), Ala. R.App. P. We granted Progressive's petition for permission to appeal.
 Analysis
The trial court certified the following controlling questions of law as appropriate for review on this permissive appeal:
 "(1) Whether or not a spouse can be considered a named insured when `named insured' is not defined by the policy but the spouse is not identified as a named insured on any documentation and, if not, then
 "whether or not a husband can make a claim for uninsured/underinsured benefits on behalf of a child under an insurance policy, issued to his wife, in which the only named insured has explicitly rejected uninsured/underinsured motorist coverage."
We answer both questions in the negative.
We answered a controlling question of law arising from a similar set of facts in Progressive Specialty Insurance Co.v. *Page 1140 Green, 934 So.2d 364 (Ala. 2006), and held in that case that "[a] spouse of a deceased person, who was not specifically named as an insured on the deceased person's insurance policy, cannot receive uninsured-motorist benefits if the deceased, who was the sole named insured, expressly rejected uninsured-motorist benefits."
The trial court certified the controlling questions of law in this case, and this Court granted Progressive permission to appeal the trial court's interlocutory order beforeGreen was decided. However, the parties submitted briefs to this Court after this Court released its opinion inGreen. Our decision in Green effectively answers the first question, which was based on Stephen's contention in the trial court that he should be considered a "named insured" even though he was not identified as a named insured in Stephanie's Progressive policy. In Green, Judy Green, a widow, sued Progressive seeking uninsured/underinsured-motorist benefits under a Progressive policy listing her deceased husband, Dana Green, as the sole named insured. Dana Green was killed in a car accident. Before his death, he had explicitly rejected uninsured/underinsured-motorist coverage on a Progressive policy listing him as the sole named insured. Despite Dana's rejection of uninsured/underinsured-motorist coverage, Judy sued Progressive, alleging that she was entitled to uninsured/underinsured-motorist benefits. She argued that, although she was not explicitly listed as a named insured on the policy, because Dana's insurance policy defined the phrase "you" and "your" to include the "named insured on the Declaration Page, and that person's spouse" and employed the terms "you" and "your" throughout, Dana's Progressive policy gave his spouse the same rights under the policy as the named insured.934 So.2d at 366-67. One such right, she argued, was the right to reject uninsured-motorist coverage in writing, pursuant to Alabama's uninsured-motorist statute. See § 32-7-23(a), Ala. Code 1975.[2] She contended that, because she was a named insured under Dana's policy and did not reject uninsured/underinsured-motorist coverage in writing, Dana's rejection did not affect her rights to those benefits. We rejected Judy's argument and held that "Dana's Progressive policy unambiguously distinguishes the `named insured' from the `named insured's spouse,'" and concluded that, because Judy was not a "named insured" under his policy with Progressive, Dana's rejection of uninsured/underinsured-motorist coverage was binding upon her as well. 934 So.2d at 367.
Stephen argues that he should be considered a named insured under Stephanie's Progressive policy based on a slightly different rationale from the one advanced in Green. To support his argument, Stephen relies on the definition in Stephanie's Progressive policy of "you and your" as "a *Page 1141 
person or persons shown as a named insured on the Declarations Page" and as "the spouse of a named insured if residing in the same household."[3] He contends that because Stephanie's Progressive policy contains multiple references to "your application," the policy's definition of "your" means that he and Stephanie are both applicants and therefore "equal through the eyes of the policy." Stephen's brief, p. 7. Stephen argues (1) that if Stephanie is a named insured and he and Stephanie are equal in the eyes of the policy, both he and Stephanie should be considered named insureds, and (2) that because the signature line of the "Rejection of Uninsured/Underinsured Motorist Coverage" asks for the "Signature of Insured-Applicant," and he is, he argues, an "insured-applicant," both he and Stephanie had to sign the form to render it effective. We disagree with both arguments.
The fact that the Progressive policy distinguishes the named insured from the named insured's spouse in its definition of "you and your" shows that the two are different. SeeGreen, 934 So.2d at 366-67. This distinction is underscored by the specific identification of Stephanie on the declarations page as the named insured and Stephen as a "listed driver." "Insurance contracts are to be enforced as they are written, as long as there is no ambiguity in the provisions involved."Watkins v. United States Fid. Guar. Co.,656 So.2d 337, 339 (Ala. 1994) (citing St. Paul Mercury Ins. Co.v. Chilton-Shelby Mental Health Ctr., 595 So.2d 1375, 1377
(Ala. 1992)). We answer the first question in the negative; we hold that Stephen cannot be considered a named insured under the insurance policy by virtue of being the spouse of the named insured living in the same house-hold.
The language of the "Rejection of Uninsured/Underinsured Motorist Coverage" undercuts Stephen's second argument that both his and Stephanie's signatures were required to render the rejection of uninsured/underinsured-motorist coverage effective and that, therefore, Stephen can claim such benefits on Hannah's behalf. The "Rejection of Uninsured/Underinsured Motorist Coverage" Stephanie signed provides: "I understand and agree that this rejection of Uninsured/Underinsured Motorist Coverage shall be binding on all persons insured under the policy." This Court has held:
 "`If the language contained in the contract is unambiguous, the policy must be enforced as written.
 "`In determining whether the language of a contract is ambiguous, courts construe the words according to "the interpretation ordinary men would place on the language used therein." Quick v. State Farm Mutual [Automobile] Ins. Co., 429 So.2d 1030, 1033 (Ala. 1983). The words are given the meaning that "persons with a usual and ordinary understanding" would place on the words. Cashatt v. State Farm Mutual [Automobile] Ins. Co., 510 So.2d 831, 833
(Ala.Civ.App. 1987).'"
Liggans R.V. Ctr. v. John Deere Ins. Co.,575 So.2d 567, 569 (Ala. 1991) (quoting the trial court's order). The unambiguous and "ordinary understanding" of the language in the "Rejection of Uninsured/Underinsured Motorist Coverage" indicates that the policy does not require the signatures of all the insureds for a rejection of uninsured/underinsured-motorist coverage *Page 1142 
to be valid. It expressly states that "I [the signatory] understand and agree that this rejection . . . shall be binding on all persons insured under the policy." Thus, the signature of the sole named insured, Stephanie, who was applying for the insurance, was sufficient to decline uninsured/underinsured-motorist coverage under the Progressive policy.[4]
In addition, Alabama's uninsured-motorist statute, §32-7-23(a), Ala. Code 1975, provides that "the named insured shall have the right to reject [uninsured/underinsured-motorist] coverage" in writing.[5] Stephen was not a named insured; therefore, he did not have the right to reject the coverage. Thus, once Stephanie, as the sole named insured, rejected the uninsured/underinsured-motorist coverage, those benefits were no longer available to Stephen or to Hannah. See Green,934 So.2d at 368; see also Nationmde Ins. Co. v.Nicholas, 868 So.2d 457, 460 (Ala.Civ.App. 2003) ("The Uninsured Motorist Statute `lays down a rule of construction requiring courts to interpret all motor vehicle liability insurance policies as providing the statutory coverage unless an agreement to reject on the part of the named insured is in evidence.'" (quoting Insurance Co. of North America v.Thomas, 337 So.2d 365, 369 (Ala.Civ.App. 1976)).
Therefore, we answer the second question in the negative; we hold that Stephen cannot, by relying on the fact that he did not sign the "Rejection of Uninsured/Underinsured Motorist Coverage," make a claim for such benefits on Stephanie's insurance policy on behalf of Hannah.
 Conclusion
We answer in the negative both questions certified by the trial court as controlling questions of law. Because our answers effectively terminate this litigation, we reverse the trial court's judgment and render a judgment in favor of Progressive.
REVERSED AND JUDGMENT RENDERED.
NABERS, C.J., and HARWOOD, STUART, and BOLIN, JJ., concur.
[1] Stephanie's Progressive policy defines "insured person" to include "any relative when struck by a motor vehicle of any type."
[2] Section 32-7-23(a), Ala. Code 1975, provides:
 "No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in subsection (c) of Section 32-7-6, under provisions approved by the Commissioner of Insurance for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, that the named insured shall have the right to reject such coverage. . . ."
[3] The definition of "you and your" in Stephanie's Progressive policy differs from the definition found in Dana's policy in Green.
[4] We also note that neither Stephen nor Stephanie ever paid premiums for uninsured/underinsured-motorist coverage.
[5] Stephen's brief to this Court makes no reference to the Alabama uninsured-motorist statute, § 32-7-23(a), Ala. Code 1975, upon which his claim depends.